956 P.2d 674

Carolyn Joann VAUGHT and David Brian Vaught, Plaintiffs–Respondents–Cross Appellants,

v.

DAIRYLAND INSURANCE COMPANY, Defendant–Appellant–Cross Respondent.

No. 23354.

Supreme Court of Idaho, Boise, November 1997 Term.

March 10, 1998.

Rehearing Denied May 21, 1998.

Evans, Keane, Boise, for appellant. Bruce C. Jones argued.

Hepworth, Lezamiz & Hohnhorst, Twin Falls, for respondent. Jeffrey J. Hepworth argued.

TROUT, Chief Justice.

This case addresses the question of whether an insurer who fails to intervene in a case in which its insured sues an uninsured motorist, is nonetheless bound by the decision in that suit.

## I.

### BACKGROUND

On October 8, 1991, a convoy of approximately 15 Air Force trucks and trailers left from a deployment near Mountain Home, Idaho to return to their home base near Ogden, Utah. The convoy became lost when the lead vehicle failed to take the exit for Utah located at the interstate 84/86 interchange just east of Burley and instead, continued on toward Pocatello. In accordance with Air Force regulations, all the rest of the trucks followed the lead vehicle toward Pocatello. The lone exception appears to have been the last truck in the convoy carrying flashing lights and a warning sign. That truck took the exit to Utah and so was not part of the convoy at the time of the accident.

After realizing the mistake, the commander of the convoy in the lead vehicle decided to make a U-turn using an unpaved, emergency cross-over lane in the median between the east and west bound lanes of the interstate. At the time he made the decision, the commander knew that using the cross-over lane was a violation of Idaho law. There was no radio communication between the trucks in the convoy through which the commander could inform the drivers of his plan, so the commander simply ordered that his driver in the lead vehicle move from the right lane of the interstate to the left lane and then park in the cross-over lane. The rest of the trucks followed the example of the lead vehicle and moved from the right lane into the left lane and parked in the cross-over lane. When the cross-over lane filled, it became

necessary for the rest of the trucks to park in the left lane of the interstate. Although the trucks moved as far off the road as possible, substantial portions of the trucks remained in the traffic lane.

At the same time, respondent Carolyn Vaught was driving her van on the interstate from her home in Buhl to Pocatello. Shortly after passing the interstate 84/86 interchange, Vaught noticed a convoy of slow-moving military trucks in the right lane. Vaught moved from the right lane to the left in order to pass the trucks. At the time she changed lanes, Vaught noticed a yellow semi tractor and trailer (phantom semi) behind her a comfortable distance in the left lane. Vaught, who was traveling at 65 miles per hour, passed the military trucks which were traveling at 45 miles per hour spaced 90 yards apart. As Vaught crested a hill about one-half mile from the cross-over lane, she noticed military trucks in her lane as well. Although the stop lights and turn signals of the trucks were activated, Vaught did not observe that the trucks were stopped and so did not disengage her cruise control. Vaught did not realize that the trucks in her lane were stopped until she was about 500 feet from the point of impact. Vaught could not immediately pull into the right lane because of the presence of an Air Force truck driven by Airman Skroback (Skroback truck). Vaught felt she could not safely stop because the phantom semi was now 20 to 30 feet behind her. As the Vaught van and the phantom semi passed the Skroback truck, the phantom semi moved into the right lane and pulled alongside Vaught's van. Upon seeing Vaught's oncoming van in his rear view mirror, Sergeant Mokrzycki, the driver of the last truck in the left lane, braced himself and began pumping his brake pedal to warn her. Vaught, effectively boxed in by the phantom semi, was unable to stop in time and hit the right rear of the trailer Mokrzycki was towing. At impact, the Vaught van was estimated to have been traveling at about 30 miles per hour. The collision caused the rear of Vaught's van to rotate into the right lane where it contacted the rear of the trailer on the phantom semi. The phantom semi did not stop and was never identified.

Vaught suffered physical injuries and both her van and the Air Force vehicle were heavily damaged. Vaught was insured by appellant Dairyland under a policy that provided collision, property damage, medical expenses and uninsured motorist coverage. Vaught filed a claim with Dairyland who paid medical and collision benefits. The Air Force sent Vaught letters demanding payment for damage done to its vehicle. The Air Force demand letters were forwarded by Vaught's attorney to Dairyland. Dairyland investigated the claim and determined that Vaught was at least 50% at fault. Dairyland reached a settlement with the Air Force for the policy limits of $15,000.

On August 6, 1992, Vaught and her husband (the Vaughts) filed suit in federal court against the Department of Defense to recover for damages resulting from the accident. The driver of the phantom semi was not named as a party. On May 6, 1993, the Vaughts made a claim to Dairyland under the uninsured motorist provision of their policy due to the involvement of the phantom semi. Dairyland then approached the Vaughts about intervening in the federal lawsuit; however, the Vaughts refused to stipulate to Dairyland's intervention. Two weeks before the start of the federal trial, Dairyland's attorney again contacted the Vaughts' attorney proposing Dairyland's intervention in the case, which the Vaughts' attorney again declined because he felt that Dairyland's cross-examination of Mrs. Vaught would be damaging to the Vaughts' case. Following a bench trial, the federal magistrate judge issued his findings of fact and conclusions of law in which he apportioned 70% of the liability for the accident to the Air Force, 30% to the phantom semi, and 0% to Mrs. Vaught. Two days later on June 30, 1994, relying on the federal court judgment, the Vaughts filed a complaint against Dairyland alleging breach of the uninsured motorist provision of the policy and demanding payment of the policy limits of $25,000 plus prejudgment interest and attorney fees.

In August 1994, Dairyland offered to settle for $25,000 and in December 1994, offered to arbitrate the dispute. The Vaughts rejected

both offers. On January 6, 1995, the Vaughts filed a motion to amend their complaint to include claims for bad faith and punitive damages. The district court granted the motion to add the bad faith claim, but denied the addition of the punitive damages claim. On March 14, 1995, Dairyland filed an offer of judgment for $25,000 including interest and attorney fees. Dairyland then moved for summary judgment on the bad faith claim and on the issue of whether it was bound by the federal court decision. The Vaughts moved for summary judgment on the breach of contract claim. The district court ruled that Dairyland was bound by the federal court decision and granted summary judgment in favor of the Vaughts on the contract claim. The district court also granted summary judgment in favor of Dairyland on the bad faith claim. The district court awarded the Vaughts $25,000 in contract damages, $15,106.84 in prejudgment interest, $35,545.50 in attorney fees, and $1,497.90 in costs.

On appeal, Dairyland claims the district court erred in granting summary judgment on the contract claim based on the federal court decision and erred in awarding costs, attorney fees and prejudgment interest to the Vaughts. In addition, Dairyland appeals the district court's grant of a protective order that precluded Dairyland from deposing the Vaughts' counsel. The Vaughts filed a cross-appeal challenging the district court's grant of summary judgment on the bad faith claim, the denial of the Vaughts' motion to add a punitive damages claim, and the district court's ruling that Dairyland had not waived the attorney-client privilege. The Vaughts also seek attorney fees on appeal.

## II.

### STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). On review, this Court uses the same standard as the district court and "liberally construes the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences and conclusions in that party's favor." *Friel v. Boise City Housing Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994) (citations omitted). If, as in the present case, "the evidence reveals no disputed issues of material fact, what remains is a question of law, over which this Court exercises free review." *Id.*

■■■ The control of discovery is an area within the discretion of the trial court. *Service Employees Int'l Union, Local 6 v. Idaho Dept. of Health and Welfare*, 106 Idaho 756, 683 P.2d 404 (1984). Therefore, the proper standard for reviewing a trial court's grant of a protective order is abuse of discretion. This Court also uses the abuse of discretion standard to review issues of costs under I.R.C.P. 54(d)(1), *Adams v. Krueger*, 124 Idaho 74, 856 P.2d 864 (1993), the award of attorney fees under I.C. § 41–1839, *Young v. State Farm Mutual Automobile Insurance Co.*, 127 Idaho 122, 898 P.2d 53 (1995), and the amendment of pleadings, *Southern Idaho Production Credit Ass'n. v. Gneiting*, 109 Idaho 493, 708 P.2d 898 (1985).

## III.

### EFFECT OF PRIOR FEDERAL PROCEEDINGS

Central to the district court's grant of summary judgment on the Vaught's breach of contract claim was the court's ruling that Dairyland was bound by the decision in the federal tort action. Dairyland claims it cannot be bound by the result of the federal proceedings because it was not a party to that action. Dairyland further argues that by refusing to agree to intervention, the Vaughts left Dairyland vulnerable to a suit for bad faith if it did in fact intervene. Under these circumstances, Dairyland argues it would be unfair to make it choose between intervening and facing a possible action for bad faith, or being bound by a decision to which it was not a party. The Vaughts, citing case law from other jurisdictions, argue that once insurers have been given notice that their insured has filed suit against

an uninsured motorist, they must either intervene or be bound by the decision.

■ We begin by noting that as a general rule "a nonparty is not precluded from relitigating matters decided in a prior action simply because it passed by an opportunity to intervene." 18 Wright et al., *Federal Practice and Procedure*, § 4452, p. 446 (West 1981). The Vaughts argue that insurance cases are an exception to this rule. We find our recent decision in *Anderson v. Farmers Insurance Co.*, 130 Idaho 755, 947 P.2d 1003 (1997), dispositive on this issue. In *Anderson*, the insured obtained a default judgment against an uninsured motorist without having given the insurer notice of the suit. The insured then attempted to collect uninsured motorist benefits from the insurer on the basis of the default judgment. When the insurer refused to pay and demanded arbitration, Anderson filed suit claiming bad faith. In affirming a grant of summary judgment for the insurer, this Court held that regardless of notice, an insurer has no duty to intervene on behalf of an uninsured motorist and cannot be bound by a decision to which it was not a party under either claim preclusion or issue preclusion. If anything, the facts in this case are more compelling than in *Anderson*. Here, Dairyland did not simply fail to intervene, but decided not to intervene at the request of its insureds, the Vaughts. Because *Anderson* controls, we must conclude that the district court erred in holding that Dairyland was bound by the federal court's decision holding the uninsured motorist partially responsible for the accident and, therefore, we reverse the grant of summary judgment in favor of the Vaughts on their breach of contract claim.

We are aware that our decision not to hold non-party insurers bound may result in multiple litigation. The Vaughts, however, had it within their power to avoid multiple litigation. The Vaughts could have stipulated to Dairyland's intervention or, under Fed. R.Civ.P. 60, the Vaughts could have joined Dairyland as a party to the litigation. Once made a party, there is no question that Dairyland would have been bound by the federal court decision; however, the Vaughts made a strategic decision not to include Dairyland in the federal court action.

## IV.

### PHYSICAL CONTACT REQUIREMENT

■ Dairyland also contends that summary judgment on the contract claim was not proper because the district court did not require Vaught to prove that her injuries were the result of contact with the phantom semi. Dairyland bases its contention on the following language in the policy.

> We promise to pay the damages you're legally entitled to receive from the owner or operator of an uninsured motor vehicle because of bodily injury. We'll pay those damages for bodily injury you suffer in a car accident while occupying a motor vehicle or, as a pedestrian, as a result of having been struck by an uninsured motor vehicle.

Dairyland argues that the phrase "as a result of having been struck by an uninsured motor vehicle" unambiguously modifies the phrase "damages you're legally entitle to receive" in the first sentence of the policy language quoted above. Under Dairyland's interpretation, Vaught can only collect benefits for bodily injuries directly resulting from contact with the phantom semi. Since Vaught's injuries were due to her collision with the Air Force vehicle, Dairyland argues she is not entitled to uninsured motorist benefits.

The Vaughts argue that the "as a result of" language modifies the immediately preceding phrase, "bodily injury you suffer in a car accident." Under the Vaughts' interpretation, all that is required is some contact between the Vaughts' van and the phantom semi. This is the interpretation adopted by the district court and we agree with that interpretation. At best, the language of the policy is ambiguous on this point. "When confronted with ambiguous language in an insurance contract, we must determine what a reasonable person would have understood the language to mean." *Mutual of Enumclaw Ins. Co. v. Roberts*, 128 Idaho 232, 235, 912 P.2d 119, 122 (1996) (citation omitted). Any ambiguity "must be construed most strongly against the insurer." *Id.* We there-

fore hold that the district court did not err in ruling that Vaught need only prove that some contact which contributed to the accident took place between her van and the phantom semi and not that her injuries were the result of that contact.

## V.

## BAD FAITH AND PUNITIVE DAMAGES CLAIMS

### A. Bad Faith.

The Vaughts assert that the district court erred in granting summary judgment in favor of Dairyland on the bad faith claim. The Vaughts argue that Dairyland's refusal to pay their uninsured motorist claim was bad faith because Dairyland had objective knowledge in the form of the federal court judgment that it owed the Vaughts benefits and because Dairyland subjectively knew it owed benefits. Dairyland counters that it is not bad faith to litigate a fairly debatable claim.

■■■ An insurer commits the tort of bad faith when it "intentionally and unreasonably denies or delays payment on a claim, and in the process harms the claimant in such a way not fully compensable at contract...." *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 98, 730 P.2d 1014, 1018 (1986) (quotes and citation omitted). However, "[a]n insurer does not commit bad faith when it challenges the validity of a 'fairly debatable' claim, or when its delay results from honest mistakes." *Id.* at 100, 730 P.2d at 1020. Likewise, when a claim involves a legal question of first impression, an insurer does not commit bad faith by litigating the claim even if the insurer does not prevail. *Squire v. Exchange Ins. Co.*, 116 Idaho 251, 253, 775 P.2d 143, 145 (Ct.App.1989).

■■■ Assuming, without deciding, that a bad faith action can arise from an uninsured motorist claim, we do not find that Dairyland's actions constituted bad faith. The question of whether Dairyland was bound by the decision in the federal tort action was a legal question of first impression in Idaho and, therefore, it was fairly debatable whether Dairyland would be bound.

■■■ The Vaughts argue that Dairyland's offer to settle the state court action for the policy limits amounts to an admission by Dairyland that it was liable and, therefore, Dairyland's refusal to pay benefits unless the Vaughts signed a liability release was bad faith. We cannot agree. Dairyland's adjustor testified that the $25,000 figure was not an estimate of liability, but was instead based on a number of factors. The case cited by the Vaughts in support of their argument, *Chester v. State Farm Insurance Co.*, 117 Idaho 538, 789 P.2d 534 (Ct.App.1990), is inapposite. In *Chester*, the insurer conceded that it owed benefits to the insured. In this case, Dairyland contends that because it was not bound by the federal court decision and because, based on its investigation it had concluded that Mrs. Vaught was at fault, Dairyland did not owe the Vaughts any benefits under the uninsured motorist provision of the policy. We agree with the district court that the question of Dairyland's liability under the uninsured motorist provision was fairly debatable and we conclude that it was not error to grant summary judgment in favor of Dairyland on the issue of bad faith.

### B. Punitive Damages.

■■■ The Vaughts contend that the district court erred in denying their motion to amend their complaint to add a claim for punitive damages. On this issue the Vaughts simply restate their bad faith arguments. The Vaughts argue that Dairyland's actions constituted bad faith and that Dairyland's actions were the result of a policy not to pay valid claims; therefore, punitive damages are justified.

"Punitive damages are not favored in the law and should only be awarded in the most unusual and compelling circumstances. The policy behind punitive damages is deterrence rather than punishment." *O'Neil v. Vasseur*, 118 Idaho 257, 265, 796 P.2d 134, 142 (Ct. App.1990) (citations omitted). To support a motion to add punitive damages under I.C. § 6-1604, the Vaughts needed to show a reasonable likelihood that they could prove by a preponderance of the evidence that Dairyland acted oppressively, fraudulently, wantonly, maliciously or outrageously. Us-

ing the criteria set forth in *Sun Valley Shopping Ctr. v. Idaho Power*, 119 Idaho 87, 803 P.2d 993 (1991), we find no abuse of discretion in the district court's denial of the Vaughts' motion to add punitive damages.

## VI.

## DISCOVERY ISSUES

### A. Protective Order.

■ Dairyland contends that the district court erred in not allowing Dairyland to depose the Vaughts' counsel regarding conversations between the Vaughts' attorney and the attorney retained by Dairyland. This issue is without merit. The conversations at issue involved the Vaughts' refusal to agree to Dairyland's intervention. The Vaughts did not contest the affidavit by Dairyland's attorney as to the content of these conversations. Since there was no dispute as to what was said, it is unclear what additional information Dairyland would gain by a deposition. The deposition would, however, put the Vaughts' attorney in the position of being a witness which would compromise his ability to represent the Vaughts. Absent some showing by Dairyland that the Vaughts' attorney had critical information unavailable from another source, the district court did not abuse its discretion in issuing the protective order.

### B. Attorney/Client Privilege.

■ On cross-appeal, the Vaughts argue that in order to determine if Dairyland's decision not to intervene was taken in good faith the district court should have allowed them to question Dairyland's attorney, Thomas High, about his communications with Dairyland regarding intervention. The Vaughts contend that Dairyland waived the attorney/client privilege by relying on the affidavit testimony of Mr. High that Dairyland believed it would be bad faith to intervene in the federal tort action. The only affidavit by Mr. High in the record does not mention bad faith, but instead refers to communications between himself and the Vaughts' attorney regarding the Vaughts' desire that Dairyland not intervene. The communications between Mr. High and the Vaughts' attorney were clearly not privileged. Since there is no indication in the record that Dairyland put privileged communications into evidence, there was no waiver and Dairyland's invocation of the privilege was proper.

## VII.

## COSTS, ATTORNEY FEES AND PREJUDGMENT INTEREST

Because we vacate the district court's grant of summary judgment on the Vaughts' breach of contract claim, we also vacate the district court's award of costs, attorney fees and prejudgment interest to the Vaughts. Due to their failure to prevail on appeal, the Vaughts are not entitled to attorney fees under either I.C. § 41–1839 or I.C. § 12–121.

## VIII.

## CONCLUSION

For the reasons stated above, the district court's ruling that Dairyland was bound by the previous federal court decision and its grant of summary judgment in favor of the Vaughts on their breach of contract claim is hereby vacated and remanded for further proceedings. The decisions of the district court as to the claims for bad faith and punitive damages are hereby affirmed. We award costs on appeal to appellants.

JOHNSON, SILAK, SCHROEDER and WALTERS, JJ., concur.