8 P.3d 1234

Max WEAVER, an individual, Plaintiff–
Counterdefendant–Respondent,

v.

Frank D. STAFFORD, Sr., Defendant–
Counterclaimant–Appellant,

and

Owyhee Village, Inc., an Idaho
corporation, Defendant–
Respondent.

Owyhee Village, Inc., an Idaho
corporation, Cross–
Claimant,

v.

Frank D. Stafford, Sr., Cross-Defendant.

No. 25238.

Supreme Court of Idaho,
Boise, March 2000 Term.

July 14, 2000.
Rehearing Denied Sept. 22, 2000.

Lawrence G. Sirhall, Jr., Boise, for appellant, argued.

Uranga & Uranga, Boise, for respondent Max Weaver. Louis L. Uranga argued.

Randolph E. Farber, Nampa, for respondent Owyhee Village, Inc., argued.

TROUT, Chief Justice.

This case involves an action for trespass, breach of warranty of title, negligent interference with appropriative water rights and slander of title. Frank Stafford (Stafford) appeals from the district judge's decision that he trespassed upon Max Weaver's (Weaver) property and slandered the title of Owyhee Village, Inc.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Three parcels of real property are involved in this dispute. Stafford purchased the parcel at 4912 Laster Lane (the Stafford property) consisting of 1.39 acres on October 11, 1994. At the time Stafford purchased the Stafford property, Max Weaver (Weaver) owned the parcel at 4920 Laster Lane (the Weaver Laster Lane property). The Weaver Laster Lane property is southeast of the Stafford property and is approximately 4.26 acres in size. On October 1, 1996, Weaver acquired the parcel referred to as Lot 16, located southwest of the Stafford property, by a warranty deed subject to a deed of trust in favor of Owyhee Village, Inc. Lot 16 is approximately 5.25 acres in size.

A cement irrigation ditch (the cement irrigation ditch) runs along the northeast side of Lot 16 and parallel to the boundary between Lot 16 and the Stafford property. The cement irrigation ditch has been in place for many years and was previously used to irrigate the beet field which existed on Lot 16 prior to 1969.

Before Stafford and Weaver acquired their respective parcels, there was both a fence and a dirt irrigation ditch (the original dirt ditch) running northeast of the cement ditch. While Stafford believed the original fence was the boundary between Lot 16 and the Stafford property, there was never any conversation or agreement with anyone from Owyhee Village to that effect. Stafford removed the original fence and filled in the original dirt ditch sometime in the fall of 1994 or the spring of 1995. During the summer of 1995, Stafford filled in all the irrigation laterals running from the original dirt ditch that serviced his property. Stafford testified at trial that the original dirt ditch was located ten feet northeast of the cement irrigation ditch on Lot 16 and ten feet southwest of the boundary line between Lot 16 and the Stafford property.

David Wilson, who resided at 4920 Laster Lane for approximately twenty-five years prior to Weaver's acquisition of the property, testified that he regarded the original dirt ditch as the boundary line between Lot 16 and the Stafford property. Wilson stated that there was an informal agreement among neighbors, but no recorded easement, concerning a ten foot right-of-way to maintain the original dirt ditch. Dorothy Bright (Bright), owner of the parcel directly east of the Stafford property, also testified that she regarded the original dirt ditch as the boundary between Lot 16 and the Stafford property. Bright testified that the former owners of the Stafford property used the original dirt ditch for irrigation. Greg Skinner (Skin-

ner), a licensed surveyor, testified that the original dirt ditch approximately followed the surveyed boundary between Lot 16 and the Stafford property.

In the fall of 1995, Stafford erected a new fence northeast of and parallel to the cement irrigation ditch on Lot 16. Stafford's testimony about the location of the new fence was not consistent. While on one occasion he testified that he placed the new fence in the location of the original fence, he also testified at trial that he was unsure where he had placed the new fence in relation to the location of the original fence. Stafford also testified that he did not measure the distance from the original fence to the cement irrigation ditch. Weaver regarded Stafford's new fence as an encroachment upon Lot 16 and demanded its removal. Stafford complied in the spring of 1997.

In March 1997, Stafford excavated a new dirt ditch which approximately followed the line of the new fence. Stafford admitted at trial that the new dirt ditch was located on Lot 16 without Weaver's permission. Stafford never used the new ditch.

Stafford's warranty deed contains the following relevant metes and bounds description of the boundary line between Lot 16 and the Stafford property:

South 7° 0' East 366 feet to the center of an irrigation lateral; thence meandering

North 29° 50' West 23 feet;

North 43° 20' West 168.5 feet;

North 71° 20' West 92 feet; and

North 35° 20' West 228.4 feet along the center of an irrigation lateral to a point 36 feet South of the North boundary of the aforesaid Southeast Quarter; thence ...

In April 1995, licensed surveyor Skinner performed a boundary survey on behalf of Stafford and Weaver. Skinner established the boundary between Lot 16 and the Stafford property based on existing monuments. Skinner performed a second survey in November of 1996 for Weaver and established that Stafford's new fence encroached upon Lot 16 from a minimum of 2.17 feet to a maximum of 10.2 feet. On April 13, 1997, Skinner determined that Stafford's new ditch

encroached upon Lot 16 by approximately five to ten feet.

Weaver hired Chris Wildt (Wildt) to conduct an archaeological cross-section of the boundary area between Lot 16 and the Stafford property. Stafford hired Dr. Mark Plew (Dr. Plew), a professor of anthropology to evaluate Wildt's report and to perform his own cross-sectional analysis. Dr. Plew dug three cross-sectional trenches starting approximately five feet from the cement irrigation ditch on Lot 16 and extending northeast across the boundary line between Lot 16 and the Stafford property. Dr. Plew discovered two features which were likely ditches. Feature 1 was discovered three meters north of the cement irrigation ditch, which did not appear to have drawn water for any extensive period and may have been used for two years or less. Dr. Plew concluded the second ditch, Feature 2, had been in use for a very long time, was the larger of the two ditches and was older than Feature 1. Dr. Plew testified that Feature 2 was close to the boundary line between Lot 16 and the Stafford property.

Licensed surveyor John T. Eddy (Eddy) also performed a survey of the Stafford property at Stafford's request. Eddy's October 1, 1997 survey established the boundary between Lot 16 and the Stafford property along a meandering dirt ditch, the same as Skinner's November 7, 1996 survey. Eddy testified that Feature 2, as identified in Dr. Plew's report, coincided with the meandering ditch referenced in Stafford's deed.

Water is provided to the Stafford property and the Weaver Laster Lane property by the Pioneer Irrigation District via Pioneer's South Branch Lateral 15.0, Gate 24. Water is provided to Lot 16 via Pioneer's South Branch Lateral 15.6, Gate 23A. Water for the Stafford property and Weaver Laster Lane property historically flowed from Gate 24 in a northwesterly direction to a T-box located near the point where the northwestern corner of the Weaver Laster Lane property meets the southeastern corner of the Stafford property. At the T-box, irrigation water flowed to the Stafford property via the original dirt ditch between the Stafford property and Lot 16 or could be directed to the

northeast to irrigate a parcel directly east of the Stafford property. Water from the South Branch Lateral 15.6, Gate 23A flows through the cement ditch in the opposite direction.

Weaver made several changes to the irrigation lateral which began at Gate 24 and continued across the Weaver Laster Lane property. At the end of the lateral, Weaver installed a concrete collection box to replace the T-box, and also installed a concrete slab in the collection box to block the outlet to the Stafford property. That action lead to Stafford filing a misdemeanor criminal charge against Weaver which was dismissed. A condition of the dismissal was that Weaver remove the concrete slab and install a pipe from the collection box to the edge of Stafford's property. Weaver removed the concrete slab and installed a pipe, but Stafford did not excavate a ditch to the pipe.

Tom Eddy testified as an expert in hydrology and stated that changing the grade of the pipe from the collection box to the Stafford property would improve the flow of water to the Stafford property. Tom Eddy also stated that without any change to the elevation of the collection box, water would travel from the collection box to the end of the Stafford property.

During the 1995 and 1996 irrigation seasons, Stafford diverted water from the cement irrigation ditch to irrigate the Stafford property. Stafford had no authorization nor permission to draw water from the cement irrigation ditch or to divert water from that ditch onto his land. Weaver demanded that Stafford cease diverting water from the cement irrigation ditch after purchasing Lot 16 and Stafford complied.

Weaver filed a complaint against Stafford and Owyhee Village, Inc. alleging that Stafford had committed trespass by erecting a fence and subsequently excavating a ditch on Weaver's property. Weaver sought monetary damages, injunctive relief, punitive damages and attorney fees and costs. Stafford denied Weaver's allegation and asserted affirmative defenses, alleging that he was entitled by prescription or boundary by agreement to maintain a fence between the adjoining properties and that a prescriptive

irrigation right-of-way existed. Stafford counterclaimed that Weaver had negligently and/or intentionally interfered with Stafford's appropriative water rights and that he had acquired an easement by prescription to maintain an irrigation ditch on Weaver's property. Owyhee Village cross-claimed that Stafford committed slander of title by alleging that he had an interest in Weaver's Lot 16. The district judge entered an Amended Judgment on January 29, 1999, finding that Stafford had trespassed upon Weaver's Lot 16 and awarding Weaver $5,000 in punitive damages. The district judge also determined that Stafford slandered the title of Owyhee Village and awarded Owyhee Village $7,832.35 in attorney fees and costs. Stafford has now appealed that decision.

## II.

## STANDARD OF REVIEW

Stafford challenges the district judge's detailed findings of fact which were set forth in his fifty-two page Memorandum Decision and Order. This Court does not set aside findings of fact unless they are clearly erroneous. I.R.C.P. 52(a); *Marshall v. Blair,* 130 Idaho 675, 679, 946 P.2d 975, 979 (1997). We will not disturb findings of fact which are supported by substantial and competent, although conflicting evidence. *Id.*

## III.

## BOUNDARY BETWEEN LOT 16 AND THE STAFFORD PROPERTY

Stafford argues the district judge should have determined the irrigation lateral, referred to in Stafford's deed, was a monument and should have used this monument to determine the boundary line between Lot 16 and the Stafford property, rather than utilizing the metes and bounds call in the deed. The district judge clearly referenced the lateral and determined that "Feature 2" as identified by Dr. Plew was basically in the same location as the lateral. The district judge noted the metes and bounds description in Stafford's deed was consistent with an earlier conveyance involving the properties

and the Skinner surveys of 1995 and 1996 which also placed the boundary line along the irrigation lateral described in Stafford's deed. The district judge further found that Feature 2 "follows the line of the surveyed boundary to a rather remarkable degree." He therefore concluded there was no ambiguity concerning the location of the boundary line between Lot 16 and the Stafford property and that the line could be clearly identified using the metes and bounds description, incorporating the reference to the lateral (Feature 2).

 Stafford asserts Feature 2 represents a monument and the district judge should have examined whether the parties intended Feature 2 to be the boundary between Lot 16 and the Stafford property. Stafford argues the district judge erred by instead using the metes and bounds description to determine the boundary. The argument is unavailing in two respects. First, notwithstanding Stafford's color of title and prescriptive easement arguments, the legal significance of Stafford's argument is unclear in that, assuming Feature 2 was a monument and established the boundary between Lot 16 and the Stafford property, Stafford still erected a new fence and excavated a new ditch on Weaver's side of Feature 2, clearly outside of Stafford's property. Second, a monument is generally considered to be a permanent, visible and identifiable physical feature. *See Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 119, 794 P.2d 1389, 1392 (1990) (citing *Achter v. Maw*, 27 Utah 2d 149, 493 P.2d 989 (1972) (monument must be a "tangible landmark," have physical properties such as "stability, permanence, and definiteness of location"); *Scott v. Hansen*, 18 Utah 2d 303, 422 P.2d 525 (1966) (monument must be "definitely identified and located")). Feature 2 cannot be deemed a monument, for purposes of resolving the boundary dispute between Weaver and Stafford, because Stafford filled in Feature 2 in the fall of 1994. The district judge was thus unable to utilize the actual irrigation lateral named in the deed because Stafford had destroyed it. The findings made by the district judge are supported by substantial and competent evidence and support his determination that Feature 2 is located where the original irrigation lateral was and allows an accurate determination of the boundary between the Weaver and Stafford property utilizing the metes and bounds description in the deed. We therefore hold the district judge did not err by using the metes and bounds description to determine the boundary between Lot 16 and the Stafford property.

## IV.

### COLOR OF TITLE

 Stafford argues the district judge erred by requiring him to prevail on his affirmative defenses of irrigation right-of-way by prescription and boundary by agreement in order to succeed on his entry under color of title argument. The argument is not supported by the circumstances of this case. The color of title doctrine arises in the context of adverse possession and refers to an instrument which has the appearance of title but is not in fact title. *Fouser v. Paige*, 101 Idaho 294, 297, 612 P.2d 137, 140 (1980) (citing *Munkres v. Chatmon*, 3 Kan.App.2d 601, 599 P.2d 314 (1979)). Color of title involves a writing which purports to convey title, but does not have that effect and passes only the color or semblance of title. *Id.* Stafford cannot maintain a color of title argument as he has failed to present evidence of any written instrument which purportedly gave him title to the portion of Lot 16 which is the subject of this action. Stafford offers only that the Owyhee Subdivision plot map reflects a twenty foot right-of-way adjacent to the cement irrigation ditch on Lot 16. The argument is unavailing to Stafford because the Owyhee Subdivision plot map is not an instrument of conveyance and does not reflect a twenty foot right-of-way north of the cement irrigation ditch on Lot 16. Moreover, Stafford knew where the boundary was, as his warranty deed contained a specific description of the boundary and the boundary was subsequently established by the Skinner and Eddy surveys. We therefore hold substantial and competent evidence supports the district judge's determination that Stafford did not enter Lot 16 under color of title.

## V.

## PRESCRIPTIVE EASEMENT

■ Stafford argues he had a prescriptive easement in that section of the original dirt ditch running northwest from the T–Box on the Weaver Laster Lane property and along the boundary between the Stafford property and Lot 16. The district judge determined Stafford did not have a prescriptive easement in the original dirt ditch as Stafford failed to establish the open, notorious, continuous and uninterrupted use of the original dirt ditch under a claim of right for five years. The district judge noted testimony from prior owners of Stafford's property was inconsistent and that Stafford filled in the original dirt ditch in the fall of 1994 or spring of 1995. The district judge further determined Stafford failed to establish a prescriptive easement because the location of the original dirt ditch could not be established with certainty.

■ A prescriptive easement requires the claimant to present reasonably clear and convincing evidence of open, notorious, continuous, and uninterrupted use under a claim of right and with the knowledge of the owner of the servient tenement for the prescriptive five year period. *Marshall v. Blair,* 130 Idaho 675, 680, 946 P.2d 975, 980 (1997). While there was testimony by people who had lived on or around the Stafford property that they had irrigated their property utilizing the original dirt ditch, the testimony was conflicting as to where exactly the ditch was located. This testimony alone is insufficient to establish a prescriptive easement in the original dirt ditch as it fails to establish the open, notorious, or uninterrupted nature of any prior use of the original dirt ditch and does not address the knowledge of such use by Weaver or any previous owner of Lot 16. Moreover, assuming Stafford did have a prescriptive easement in the original dirt ditch, Stafford abandoned this right. Abandonment of a property right must be evidenced by a clear, unequivocal and decisive act. *Perry v. Reynolds,* 63 Idaho 457, 464, 122 P.2d 508, 510 (1942) (citing *Sullivan Constr. Co. v. Twin Falls Amusement Co.,* 44 Idaho 520, 526–27, 258 P. 529, 530–31 (1927)). Mere nonuse of an easement does not effect

an abandonment. *Kolouch v. Kramer,* 120 Idaho 65, 67, 813 P.2d 876, 878 (1991). Here, Stafford testified that he filled in the original dirt ditch in the fall of 1994. Stafford's act is sufficient to abandon any prescriptive easement which may have existed in the dirt ditch. We therefore hold substantial and competent evidence supports the district judge's determination that Stafford did not have a prescriptive easement in the original dirt ditch.

## VI.

## IRRIGATION RIGHT–OF–WAY BY AGREEMENT

■ Stafford asserted an irrigation right-of-way by agreement, located in the original dirt ditch, as an affirmative defense. Stafford offered no evidence of an express or implied agreement between himself, or his predecessors in interest, and Weaver, or his predecessors in interest. Moreover, it is difficult to see the relevance of this argument. There is no question there was at one time an original dirt ditch between what is now Lot 16 and the Stafford property. That ditch was destroyed by Stafford and he then sought to relocate the ditch to a location on Lot 16. There is substantial and competent evidence to support the district judge's determination of the location of the original dirt ditch and it is not in the same place where Stafford sought to create the new ditch. While Stafford disagrees with the district judge's determination, there is nevertheless sufficient evidence in the record to support it. At this point, it appears Stafford simply asserts some right to put the new ditch in a location of his choosing and his argument for an irrigation right-of-way is unavailing.

## VII.

## WEAVER'S INTERFERENCE WITH STAFFORD'S WATER RIGHTS ·

Stafford asserts Weaver made changes to the irrigation lateral which provided water to the Weaver Laster Lane and Stafford properties. Stafford specifically alleges that Weaver tiled some portions of the irrigation lateral, replaced the T-box with a new con-

crete collection box and installed PVC pipes to irrigate one of Weaver's fields with water from the irrigation lateral. Stafford also alleges that Weaver changed the elevation of the ground around the irrigation lateral, lowered the irrigation lateral, blocked the outlet from the new concrete collection box which would have served Stafford's property and filled the area between the new concrete collection box and Stafford's property with gravel, all of which prevented Stafford from receiving water. Stafford argues the district judge erred by holding Stafford was barred from recovery under I.C. § 42–1207 because he did not have a ditch in place to receive water. Stafford also argues the district judge erred by determining Weaver did not intentionally or negligently interfere with Stafford's appropriative water rights.

**A. I.C. § 42–1207**

 Idaho Code § 42–1207 prohibits altering an irrigation ditch in a manner which impedes the flow of water or "otherwise injure[s] any person or persons using or interested in such lateral ditch." Stafford failed to introduce any evidence of the historic flow rate of water to the Stafford property before and after Weaver's changes. Dorothy Bright, however, whose property receives water from the new concrete collection box through an outlet at the same level in the collection box as the outlet to the Stafford property, testified that she received more water after Weaver's changes. In addition, Stafford cannot maintain that he was interested in receiving water from the irrigation lateral when, in the fall of 1994, Stafford filled in the ditch that would have received water from the concrete collection box. Stafford, therefore, cannot recover under I.C. § 42–1207.

**B. Negligent interference with appropriative water rights**

 The elements of common law negligence include (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage. *Brooks*

*v. Logan*, 127 Idaho 484, 489, 903 P.2d 73, 78 (1995). Here, Weaver incurred a statutory duty to avoid injury to Stafford when making changes to the irrigation lateral. Stafford fails to establish that Weaver breached that duty.

 Stafford argues that, without a shut-off mechanism on the PVC pipes which Weaver installed upstream from the concrete collection box, the concrete collection box would not fill to the top and Stafford would not receive water. Evidence at trial, however, included photographs showing the concrete collection box full to the top. Stafford also argues he was harmed by Weaver's installation of a concrete slab to block the collection box outlet to the Stafford property. Weaver removed the concrete slab and installed a pipe from the concrete collection box to the edge of Stafford's property. Stafford, however, filled in the ditch which would have received irrigation water from the pipe and carried it across Stafford's property. We therefore hold substantial and competent evidence supports the district judge's determination that Weaver did not intentionally or negligently interfere with Stafford's appropriative water rights.

**VIII.**

**STAFFORD'S MOTION TO ADD CLAIM FOR PUNITIVE DAMAGES**

Stafford argues the district judge erred by denying his motion to add a claim for punitive damages. In support of the alleged error, Stafford reasserts his contention that Weaver intentionally or negligently interfered with Stafford's appropriative water rights. The district judge denied Stafford's motion, stating "[t]he Court will allow such a motion to amend the pleadings if the moving party establishes . . . a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." The district judge concluded "the evidence before the Court does not establish such a likelihood in this case."

 To support a motion to add punitive damages under I.C. § 6–1604, Stafford is required to establish a reasonable likelihood

he could prove by a preponderance of the evidence that Weaver acted oppressively, fraudulently, wantonly, maliciously or outrageously. *See Vaught v. Dairyland Ins. Co.*, 131 Idaho 357, 362, 956 P.2d 674, 679 (1998). The district judge's determination that Stafford failed to establish such a reasonable likelihood is reviewed for abuse of discretion. *Id.*, 131 Idaho at 362–63, 956 P.2d at 679–80. The abuse of discretion inquiry examines (1) whether the trial judge correctly perceived the issue as one of discretion; (2) whether the trial judge acted within the outer boundaries of his discretion and consistently with the legal standards applicable to the specific choices available to him; and (3) whether the trial judge reached his decision through an exercise of reason. *Sun Valley Shopping Ctr. v. Idaho Power*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). It is clear from the judge's comments that he correctly understood the discretionary decision to be made, applied the correct standards and utilized reason in reaching his decision. We therefore hold the district judge did not abuse his discretion by denying Stafford's claim for punitive damages.

## IX.

## WEAVER'S CLAIM FOR PUNITIVE DAMAGES

 Stafford argues the district judge erred by awarding Weaver punitive damages for Stafford's trespass because Skinner's April 1995 survey did not establish the boundary between Lot 16 and the Stafford property and Stafford believed he had title to Lot 16. We have stated:

An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." The justification of punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that be termed "malice, oppression, fraud or gross negligence;" "malice, oppression, wantonness;" or simply "deliberate or willful."

*Highland Enters., Inc. v. Barker*, 133 Idaho 330, 348–349, 986 P.2d 996, 1014–15 (1999) (citations omitted). Punitive damages are thus appropriate in a trespass action when the defendant acted in a manner which was outrageous, unfounded, unreasonable, and in conscious disregard of the plaintiff's property rights. *See, e.g., Walter E. Wilhite Revocable Living Trust v. Northwest Yearly Meeting Pension Fund*, 128 Idaho 539, 549, 916 P.2d 1264, 1274 (1996). Where a trespassing defendant has notice that his activities constitute a trespass and nonetheless continues his trespass, the landowner plaintiff may be entitled to punitive damages. *See Aztec Ltd., Inc. v. Creekside Inv. Co.*, 100 Idaho 566, 570, 602 P.2d 64, 68 (1979). We review an award of punitive damages to determine whether the record contains substantial evidence to support the judge's finding of extremely unreasonable and malicious conduct. *Magic Valley Radiology Assocs., P.A. v. Prof'l Bus. Servs., Inc.*, 119 Idaho 558, 561, 808 P.2d 1303, 1306 (1991).

 Here, the record contains substantial evidence that Stafford's conduct was an extreme deviation from reasonable conduct. For example, in the fall of 1994 or spring of 1995, Stafford removed the original fence and filled in the original dirt ditch located between the cement irrigation ditch on Lot 16 and the surveyed boundary line. Stafford made no measurements or any documentary record regarding the location of the original fence and dirt ditch. In April 1995, the boundary between Lot 16 and the Stafford property was established by licensed survey and was determined to be in the location of the original dirt ditch. In the fall of 1995, Stafford proceeded to erect a new fence on Lot 16 which Skinner's November 1996 survey established encroached upon Lot 16 from a minimum of 2.17 feet to a maximum of 10.2 feet. In March of 1997, Stafford excavated a new dirt ditch on Lot 16 in approximately the same location as the encroaching new fence. Stafford admitted at trial that the new dirt ditch was located on Lot 16 without Weaver's permission. Stafford thus erected the new fence and excavated the new ditch on Lot 16 with full knowledge of the boundary between Lot 16 and the Stafford property, demon-

strating willful disregard for Weaver's property rights. We therefore hold substantial and competent evidence supports the district judge's punitive damages award to Weaver.

## X.

### SLANDER OF TITLE

Owyhee Village alleged Stafford slandered its title to Lot 16 by falsely and maliciously asserting an easement or ownership interest in Lot 16 which caused Weaver to withhold payment to Owyhee Village. Owyhee Village also alleged it incurred legal expenses in defense of Stafford's claims to Lot 16. Stafford argues the district judge erred by basing his slander of title conclusion on Stafford's failure to prevail on his affirmative defenses. Stafford asserts the district judge should have focused on Stafford's reasonable belief that he owned the property up to where he placed the new fence and that such belief negated the malice element of slander of title. The district judge, however, did not rely solely upon Stafford's failed affirmative defenses to find slander of title and instead set out the elements of slander of title and articulated the substantial evidence in support of his finding.

■■■■ A cause of action for slander of title requires Owyhee Village to establish the following: (1) uttering or publishing of slanderous statements; (2) when the statements were false; (3) with malice; and (4) resulting in special damages. *See Matheson v. Harris*, 98 Idaho 758, 760–61, 572 P.2d 861, 863–64 (1977). Here, Stafford's pleadings assert an interest in Lot 16 and thus satisfy the publication element of slander of title. Stafford's repeated assertion of an interest in Lot 16 was clearly false in light of the deed which set the boundary between Lot 16 and the Stafford property and Stafford's destruction of the original dirt ditch which corresponded to the boundary. Moreover, Stafford admitted that he excavated the new ditch on Lot 16 without Weaver's permission. Malice has been generally defined by Idaho courts as a reckless disregard for the truth or falsity of a statement. *See Bandelin v. Pietsch*, 98 Idaho 337, 342, 563 P.2d 395, 400 (1977). An action will not lie where a statement in slan-

der of title, although false, was made in good faith with probable cause for believing it. Stafford argues he believed the original fence was the boundary between Lot 16 and the Stafford property. Upon removing the original fence, however, Stafford did not make a good faith effort to record the location of the original fence or to place the new fence or new ditch where the original fence had been. Stafford admitted the new fence was where the original fence had been only in places. Stafford's conduct in erecting the new fence and excavating the new ditch on Lot 16 thus belie any good faith belief in his ownership interest in Lot 16. Finally, Owyhee Village has incurred special damages in the form of Weaver's refusal to tender payment and the legal expenses incurred in defending Stafford's claims. We therefore hold the district judge's slander of title determination is supported by substantial and competent evidence.

## XI.

### ATTORNEY FEES

■■■■ Weaver requests attorney fees on appeal under I.C. § 12–121. Attorney fees are proper when the appeal was brought frivolously, unreasonably, or without foundation. *Turpen v. Granieri*, 133 Idaho 244, 249, 985 P.2d 669, 674 (1999). Although Stafford predominantly raises factual issues upon which, at best, there was disputed evidence before the district court, he does raise some novel arguments concerning the meaning and use of the term monument for purposes of interpreting a deed and concerning color of title as an affirmative defense to trespass. Stafford's appeal, therefore, does not lack foundation and we decline to award Weaver attorney fees on appeal pursuant to I.C. § 12–121.

Owyhee Village requests attorney fees on appeal pursuant to I.C. § 12–120, I.C. § 12–121 and I.A.R. 41. We find no basis for an award of fees under I.C. § 12–120. As to an award of fees under I.C. § 12–121, we find sufficient merit to the question relating to slander of title to withstand an award of fees.

## XII.

## CONCLUSION

The district judge's decision finding Stafford trespassed upon Weaver's Lot 16 and slandered the title of Owyhee Village is affirmed. We award costs on appeal to Weaver and Owyhee Village.

Justices SILAK, SCHROEDER, WALTERS and KIDWELL concur.