493 P.2d 989

**K. F. ACHTER and Ruth A. Achter, his wife, Plaintiffs and Appellants,**

**v.**

**Keith W. MAW and Evelyn G. Maw, his wife, Defendants and Respondents.**

**No. 12317.**

Supreme Court of Utah.

Feb. 7, 1972.

Richards, Bird & Kump, Richard L. Bird, Jr., Salt Lake City, for plaintiffs and appellants.

Young, Thatcher, Glasmann & Warner, Baline V. Glasmann, Jr., Ogden, for defendants and respondents.

CALLISTER, Chief Justice:

Plaintiffs initiated this action to resolve a boundary dispute. The trial court rendered judgment for defendants, and plaintiffs appeal therefrom.

Defendants, pursuant to negotiations with LeR Burton, who represented LeR, a Utah corporation, purchased a tract of land in Davis County, which was conveyed by warranty deed and recorded on June 1, 1965. On July 7, 1965, defendants employed licensed surveyor, Dahl, to survey on the ground the description contained in their deed. Dahl placed stakes in the ground at all points where the description changed direction.

Plaintiffs on August 16, 1967, entered into a contract with LeR Corporation, which was confirmed by a contract from Western National Investment Corporation, for the purchase of the adjoining tract to the north of defendant's property.

The dispute involves the location on the ground of a course in the description in defendants' deed. Following a course north along the quarter section 200 feet, the deed provides:

Thence Northwesterly in a straight line to a point 700 feet West of the East

line of subject property and 300 feet North, more or less, from the South line of subject property, being on top of the south rim of the North fork of Holmes Creek Canyon.

Defendants construed this course, and the surveyor in 1965 so marked it, as describing a point 378 feet North of the South line of the property at the top of the South rim or rocky ledge overlooking a waterfall on the North Fork of Holmes Creek. Defendants assert that the point should be located exactly 300 feet North of defendants' South line, a difference of 78 feet. During the trial, the point asserted by plaintiffs was identified as PB, and the point asserted by defendants was identified as P1.

In plaintiffs' first cause of action they sought to have defendants' deed so construed as to coincide with their deed and to avert the overlap of their descriptions.

In their second cause of action, plaintiffs alleged that Keith Maw on behalf of himself and as agent for his wife orally agreed on August 15, 1967, with K. F. Achter and LeR Burton to establish the point as staked by a survey made on August 14, 1967 in accordance with the description in plaintiffs' contract. Plaintiffs prayed that the court determine the boundary in accordance with this alleged oral agreement.

In their third cause of action, plaintiffs alleged that on August 15, 1967, defendant, Keith Maw, was advised that unless he orally agreed to the establishment of the boundary as asserted by Burton and Achter, plaintiffs would not purchase the adjoining property. Plaintiffs claimed that Keith Maw stated that he was acquainted with the point established by the survey, knew the location of the stake, and the point was agreeable. In reliance on these representations, plaintiffs purchased the property and they contend that defendants are estopped to deny the establishment of the point at the location established by this oral agreement.

After a protracted trial, the court found that plaintiffs had failed to meet their burden of proof concerning the location of the point described in defendants' warranty deed. The court determined that defendants and their grantor in selecting the boundary lines of the property to be conveyed to the defendants, had selected a point on the ground that was on top of the South rim (rocky ledge) overlooking the North fork of Holmes Creek Canyon. The court found that the actual distance of the point selected was 378 feet North from the South boundary of defendants' property as confirmed by defendants' survey rather than 300 feet more or less.

The trial court further found that plaintiffs had failed to sustain their burden of

proof concerning the alleged oral agreement of defendants to the point contended by plaintiffs; but, on the contrary, defendants, in fact, had always contended their boundary was in accordance with their survey. The court further found that defendants were not estopped from asserting that their boundary ran to point P1.

At the time Maws were negotiating to purchase the property, they, their friends the Mortons, and LeR Burton attempted to measure the approximate boundaries of the property. The southwest and southeast corners were marked, but the rough terrain made it impossible to establish the exact location of the south boundary between these two points. They measured from the southeast corner in a northerly direction along a quarter section line for a distance of 400 feet; they then proceeded westerly along the south rim of the canyon wall for 700 feet to establish the approximate location of the point that is currently in dispute. Burton thought that a pine tree which they observed from the point was on the south boundary and thus the distance was determined as 300 feet more or less. After a survey was made the pine tree was found to be 50 feet north of the south boundary. The survey also revealed that as the parties had moved northerly along the eastern border they had deviated towards the west so that the point on the ground was approximately 35 feet west of where P1 was established; however, the parties realized that the point on the ground was merely an approximate location of the point. Another factor which tended to create confusion was Burton declined to sell the entire acreage which would have been within the contemplated parcel. The parties reduced the acreage by having the eastern boundary cut from 400 to 200 feet; they retained the 700 feet distance but altered the direction northwesterly to the disputed point. The grantor drew the description in the conveyance. According to Maws the grantor was in a hurry to complete the transaction; so there was not sufficient time to have a survey prior to the conveyance.

Within a month after the conveyance Maws had a survey made. Some time later Mr. Burton observed the surveyor's stake at P1, and he tore it out. Mr. Maw replaced the stake and marked the spot on a rock with yellow paint where Mr. Burton had torn out the surveyor's tack. Mr. Burton hammered out the rock where the paint was, and Mr. Maw replaced the paint. Mr. Burton made some allegations to the effect that Maws were claiming too much land but always deferred resolution of the dispute.

In August, 1967, Mr. Burton entered into an earnest money agreement with plaintiffs, a provision contained therein stated that the Achters must approve the boun-

daries as staked by a survey. Mr. Burton employed surveyor, Dahl, to mark the boundaries according to the description in the contemplated conveyance to Achters. Mr. Achter testified that he knew Burton had a dispute concerning the boundary with Maws, but he did not know the location which Maws claimed. On the same day, or the day after, the Burton survey was completed, the plaintiffs contend that Mr. Achter and Burton went to see Mr. Maw and informed him of the new survey and requested that he accompany them to observe the location of the stake, since Mr. Achter would not complete the purchase without the Maws' agreement to the boundary. Plaintiffs asserted that Mr. Maw responded that he knew the location of the stake and that he agreed. Based on this agreement, plaintiffs claim that they completed the purchase.[1]

Mr. Maw vigorously denied both the content of the conversation and the alleged time that it occurred.

One other aspect which merits discussion is the location on the ground of the description if defendants' deed were construed in accordance with plaintiff's contention. The trial judge went to the premises and viewed the points PB and P1 as well as the positions on the ground where the Maws, Mortons, and Burton had approximated the 700 feet from the eastern boundary. According to plaintiffs PB would be on a rolling brush covered hill, and the course therefrom would proceed due west to a point which is not in dispute. On the other hand, P1 (defendants' position) is located on the edge of a cliff overlooking a waterfall on the North Fork of the Holmes Creek. The course from this point would be in a southwesterly direction as is the call in the deed to the undisputed point.

On appeal, plaintiffs assert that defendants should be held estopped to claim beyond the point PB, which is 300 feet from the south boundary. Plaintiffs' position is that estoppel is an equitable plea; and, therefore, this court may review the findings as well as the law. However, this court will not disturb the findings unless they are clearly against the weight of the evidence.[2] Plaintiffs have reargued the evidence which they believe supports their claim that Mr. Maw agreed to the location of the boundary at point PB.

In Finding No. 8, the trial court found specifically:

. . . that the defendants nor either or them ever agreed that the disput-

---

1. Mrs. Maw holds the property as a joint tenant with her husband; plaintiffs offered no proof that she agreed nor do they offer any evidentiary facts to support the allegation that her husband was authorized to represent her as her agent.

2. Chevron Oil Co. v. Beaver County, 22 Utah 2d 143, 146, 449 P.2d 989 (1969).

**154**

ed point was as contended by plaintiffs but to the contrary that the defendants *in fact* always contended that the boundary was established at point P1 in accordance with the prior Rodney L. Dahl survey, . . . [Emphasis added]

■ A survey of the record reveals substantial evidence to support this finding, particularly, when it was the prerogative of the trial judge to determine credibility and make his findings accordingly.

■ Plaintiffs further assert that there is no evidence to support the finding of the trial court that defendants and their grantor agreed upon the point identified as P1. Plaintiffs state that the court must have found from out of the welter of contradictory evidence as to where the parties stood at various times with reference to the waterfall that there resulted an agreement among Burton, Maw, and Morton that a point right at the edge of the ledge was the division point. Plaintiffs argue that a review of the testimony will reveal that there was no agreement whatsoever as to any point and that P1 was not established until defendants' description was surveyed.

Mr. Morton testified that the parties intended as a monument the edge of the rim of the canyon wall, which is steep and breaks off and goes substantially straight down. At the time the measurements were made, the participants reached a point 35 feet west of P1, but they were still on the edge of the rocky rim. They realized that they would not hit exactly 700 feet from the east boundary and that the point they established was an approximation of the desired intersection of the line with the monument. The deed, which was subsequently drafted by Mr. Burton, contains a description which coincides with this intention. The survey by Mr. Dahl merely located on the rim the point agreed to by the parties, i. e., a point on the top of the rim 700 feet from the east boundary.

■ Plaintiffs finally assert that defendants' deed is ambiguous. They claim that the description in the deed stating "being on top of the South rim" does not designate a monument but a general area, and, therefore, the distances of 700 feet and 300 feet more or less which intersect at PB should control.

As previously observed there was evidence that the parties intended the edge of the rim of the canyon wall to be a monument, and it appears to so qualify.

A monument must be some tangible landmark to indicate a boundary. Objects to qualify as a monument must have certain physical properties such as visibility, permanence, stability and a definite location . . . .[3]

3. Fuoco v. Williams, 18 Utah 2d 282, 285, 421 P.2d 944, 946 (1966).

This court has consistently adhered to the principle that a distance call yields to the monument call, the reason being that there is more likelihood of mistakes in courses and distances than in calls to fixed objects which are capable of being clearly designated and accurately described.[4] This principle is particularly applicable in the instant case, where the distance call of 300 feet more or less was an estimate of the distance to the south boundary, which had not been ascertained.

In Losee v. Jones[5] this court cited with approval the following principle:

"The words used in the deed should be construed so as to ascertain the intention of the parties making it, and when the intention of the parties can be ascertained therefrom, nothing remains to effectuate that intention."

The trial court, based upon substantial evidence, ascertained the intention of the parties to defendants' deed and construed it accordingly. The judgment of the trial court is affirmed. Costs are awarded to defendants.

TUCKETT, HENRIOD, ELLETT and CROCKETT, JJ., concur.

4.  Scott v. Hansen, 18 Utah 2d 303, 422 P. 2d 525 (1966); Johnson Real Estate Co. v. Nielson, 10 Utah 2d 380, 353 P. 2d 918 (1960).

5.  120 Utah 385, 396, 235 P.2d 132, 137 (1951).