2005 UT App 36

**Paul W. CLARK, as Trustee for The Clark Children's Irrevocable Trust, Plaintiff and Appellee,**

v.

**E. Craig SMAY and Judith Smay, Defendants and Appellants.**

No. 20020758-CA.

Court of Appeals of Utah.

Jan. 27, 2005.

Rehearing Denied April 28, 2005.

E. Craig Smay, Salt Lake City, Appellant Pro Se.

T. Richard Davis, Salt Lake City, for Appellee.

Before Judges DAVIS, JACKSON, and ORME.

## OPINION

ORME, Judge:

¶1 This case involves a dispute over a strip of land located in Salt Lake County. The trial court ultimately quieted title to the disputed property in Appellee, concluding that a survey based on the metes and bounds description of a deed controlled over the depiction of a natural monument on a subdivision plat map. We affirm.

## BACKGROUND [1]

¶2 In August of 1909, the Leinket family was deeded a large parcel of land bordering on the Maple City subdivision located in Emigration Canyon in Salt Lake County. The deed described the boundaries of the land by metes and bounds. The Leinkets then recorded a plat map for the Margarethe subdivision consisting of the same land deeded to them earlier and containing the same metes and bounds description for the entire parcel. However, the Margarethe subdivision plat map also depicted a creek that had not appeared on or been described in the

---

1. Due to a defect in the recording equipment, the court reporter was unable to prepare a transcript of the testimony in this case. Absent a verbatim transcript, the parties rely upon documents and pleadings of record, a written stipulation of facts approved by the trial court, and the trial court's factual findings contained in its Order and Judgment. *See* Utah R.App. P. 11(g).

original Leinket deed, and the depiction of which later proved to be inconsistent with the metes and bounds description of the subdivision's boundaries as well as the boundaries of several lots in the subdivision.[2]

¶ 3 Years later, and after the land had passed through subsequent owners, a surveyor plotted the Margarethe subdivision's boundaries approximately ninety feet south to correspond to the creek as shown on the 1909 Margarethe subdivision plat map. Vis-a-vis the neighboring Maple City subdivision, the new survey, done in 1967, showed the boundaries of the Margarethe subdivision to overlap the Maple City subdivision.

¶ 4 Between 1972 and 1990, Appellants E. Craig and Judith Smay acquired certain parcels of land that they believed were entirely within the Margarethe subdivision. However, none of the deeds to the Smays were simple conveyances of particular lots in the subdivision as shown on the original subdivision plat map. Some of the deeds contained metes and bounds descriptions of the boundaries as "relocated" by the 1967 survey to reflect the placement of the creek drawn on the subdivision plat map, while others referred to lot designations as modified by the 1967 survey. From 1995 to 1996, Appellee Paul Clark acquired real property within the Maple City subdivision without knowledge that, according to the 1967 survey, the boundaries of his property in the Maple City subdivision were overlapped by the Smays' property. Indeed, a ninety-foot wide strip of the property Clark purportedly acquired is claimed by the Smays. The Smays argue that, according to the boundaries identified in the 1967 survey they relied upon when purchasing the land, they own the disputed strip. Conversely, Clark argues that, according to the Maple City subdivision plat that he relied

upon when purchasing the land, and consistent with the boundaries of the Margarethe subdivision as established by the metes and bounds description stated on the original subdivision plat map, he owns the ninety-foot strip of land. Moreover, Clark contends that the 1967 survey is fundamentally flawed because the boundaries of the Margarethe subdivision should be defined according to the metes and bounds description contained on the Margarethe subdivision plat map, rather than in relation to the location of the creek.

¶ 5 Clark commenced an action against the Smays to quiet title to the strip of land. The trial court entered judgment for Clark, concluding that the creek was not a monument called to in any of the legal descriptions of the property nor on the Margarethe subdivision plat map. The court also reasoned that the metes and bounds description found in the original 1909 deeds and subdivision plats gave a more reliable description of the subdivision boundaries than did the 1967 survey's placement of the property boundaries in relation to the location of the creek. It quieted the parties' titles accordingly. The Smays appeal.

## ISSUE AND STANDARD OF REVIEW

¶ 6 We must decide whether the boundaries of the land should be defined by the metes and bounds description of the Margarethe subdivision found in the 1909 deed and subdivision plat or whether they should be defined in relation to the creek, as portrayed on the Margarethe subdivision plat map and placed by the 1967 survey. If the boundaries are defined by the metes and bounds description, as Clark contends, Clark owns the disputed land. If the boundaries of the Margarethe subdivision are adjusted to match the location of the creek as represented on

---

2. A rail line is also depicted on the plat map and did not appear on, nor was it referred to in, the original Leinket deed. We attach no particular significance to the placement of the rail line on the Margarethe subdivision plat map. We did receive a letter that elaborately detailed the placement of the rail line in relation to the boundaries of the two subdivisions. We agree that the letter, which cites no supplemental authority, is beyond the scope of rule 24(i) of the Utah Rules of Appellate Procedure. Moreover, while there were some passing references to the

rail line in the briefs and at oral argument, the thrust of this dispute has centered on the location of the creek and the 1967 survey that put the subdivision's boundaries at variance with the creek's location as depicted on the plat map. Thus, the rail line's location is not of any independent relevance in this appeal. Legally, it is on the same footing as the creek: It is depicted on the recorded subdivision plat map, but no property description at issue in this case specifically refers (or "calls") to it.

the Margarethe subdivision plat map and as placed by the 1967 survey, the property belongs to the Smays.

¶ 7 Whether the creek qualifies as a called-to monument and whether the creek's location—as a called-to monument—prevails over the metes and bounds description are questions of law. *See Williams v. Oldroyd,* 581 P.2d 561, 562 (Utah 1978) (concluding as a matter of law that when a metes and bounds description conflicts with a call to a monument, the monument call takes precedence over a call of course or distance); *Achter v. Maw,* 27 Utah 2d 149, 493 P.2d 989, 993 (1972) (concluding as a matter of law that the edge of the rim of a canyon wall qualifies as a monument). Accordingly, we give no deference to the trial court and review its decision for correctness. *See State v. Pena,* 869 P.2d 932, 936 (Utah 1994) ("Controlling Utah case law teaches that 'correctness' means the appellate court decides the matter for itself and does not defer in any degree to the trial judge's determination of law.").

## ANALYSIS

¶ 8 Generally, "in interpreting legal descriptions, a call to a monument or marker takes precedence over courses and distances." *Mahas v. Rindlisbacher,* 808 P.2d 1025, 1026 (Utah 1990). The Smays argue that a monument need only be depicted on the subdivision plat map and need not be expressly called to for the monument to control the location of the land's boundaries. As a result, they argue that because the creek is depicted on the Margarethe subdivision plat map, the creek qualifies as a called-to monument and, thus, the location of the creek controls over the metes and bounds description. Therefore, we must determine whether the Margarethe subdivision plat map's depiction of the creek constitutes "a call to a monument or marker." *Id.* We note both that the creek is not referred to—is not literally "call[ed] to"—as part of any legal description, as in the classic case,[3] and that the portrayal of the creek on the plat map appears to be a rough freehand drawing rather than an exact depiction marked with measurements and angles. Nor is it tied at any point to the metes and bounds description or to the corner or boundary of any demarcated lot.

¶ 9 As we have said, the rule governing calls to monuments provides in its simplest terms that "in interpreting legal descriptions, a call to a monument or marker takes precedence over courses and distances." *Id. See Park v. Wilkinson,* 21 Utah 279, 60 P. 945, 946 (1900). The Utah Supreme Court has explained that a call to a monument is typically a more accurate indication of the parties' intentions and, thus, of what the true boundaries of the land are. *See Achter v. Maw,* 27 Utah 2d 149, 493 P.2d 989, 993 (1972). Because monuments are fixed objects, essentially unalterable in their location, they are more reliable as points on a boundary than computations of courses and distances that are susceptible to human error, *see id.,* and are difficult to envision on the ground. Moreover, because monuments "are capable of being clearly designated and accurately described," there is less likelihood of error. *Id.* For this reason, calls to monuments generally take precedence over courses and distances. *See Khalsa v. Ward,* 2004 UT App 393, ¶ 8, 101 P.3d 843. Therefore, a presumption that a reference to a monument will prevail over a metes and bounds description exists unless that presumption is unreasonable. *See id.* (recognizing presumption that ditch should form boundary of land unless presumption was unreasonable under the circumstances).

¶ 10 The monument rule is typically employed when the boundaries of property as described in a deed include a monument as a point on the boundary line in conflict with a course or distance description in the same or a competing deed which contains no mention of monuments. For example, in *Johnson Real Estate Co. v. Nielson,* 10 Utah 2d 380, 353 P.2d 918 (1960), the defendants owned a tract of land, described in part in their deed as "thence running south to the old field fence 7.25 chains, more or less, thence west along said old fence." *Id.* at 919. And in

---

3. For example, in *Khalsa v. Ward,* 2004 UT App 393, 101 P.3d 843, the eastern boundary of property was described in a deed "as running along a ditch." *Id.* at ¶ 2.

*Achter,* the legal description included the phrase "300 feet North, more or less, from the South line of subject property, being on top of the south rim of the North Fork of Holmes Creek Canyon." 493 P.2d at 990.[4]

¶ 11 In this case, the creek is never explicitly mentioned in any recorded legal description of the land, much less is it identified as a specific point on, or course of, any boundary line. However, the Smays rely on the facts that the creek is depicted on the subdivision plat map and that the legal description written on the map states that the boundaries of the land described are the "land shown on this map." In effect, the Smays argue, such land includes the creek "shown" on the map, and the boundaries must conform to their respective distances from the creek. They argue that the creek's depiction on the subdivision plat map is enough to constitute a virtual call to a monument.

¶ 12 We turn to *Johnson* for guidance on whether a depiction of a creek on a subdivision plat map is enough to constitute a call to a monument. In *Johnson,* the defendants owned a tract of land, described in part by the deed as "thence running south to the old field fence 7.25 chains, more or less, thence west along said old fence." 353 P.2d at 919. The plaintiffs disputed the boundaries of their adjoining land, asserting that their land extended to the "old field fence." Defendants challenged the plaintiffs' claim on the ground that the "7.25 chains" extended their land past the old field fence. The Court explained that

> where the *calls in a deed give the initial point and thence to some natural monument* such as a tree, a rock, or a stream, or secondarily to any other fixed object, such as a post or fence, which is *stated* to be a

given distance in feet, yards, rods, or chains from the initial point, the distance call yields to the monument *call.*

*Id.* at 920 (emphasis added).

¶ 13 Under *Johnson,* a call to a monument is made, and takes precedence over a distance call, when the deed's property description provides the initial point and then proceeds to a monument as a point on the boundary. The fact that the monument is identified as a point on the boundary is important because it indicates that the parties intended the boundaries to extend to a certain point, and because the monument is "clearly designated and accurately described," and thus, reliable. *Achter,* 493 P.2d at 993. It is reasonable to assume that, in *Johnson,* the parties chose to extend their boundaries to the old field fence, rather than to some invisible, essentially arbitrary line on the ground, because they took the effort to mention the old field fence in the description of the boundaries.

¶ 14 The Smays argue that *Coop v. George A. Lowe Co.,* 71 Utah 145, 263 P. 485 (1927), stands for the proposition that a monument need only be depicted on a subdivision plat map for it to take precedence over a metes and bounds description. *Lowe* cannot be read so expansively. In *Lowe,* the owner of a subdivision lot disputed the boundaries of her lot. *See* 263 P. at 486. The subdivision plat depicted the subdivision as being enclosed by three different roads. *See id.* at 486–87. The owner's lot was depicted as being 197 feet wide and an adjoining lot was depicted as being 142.5 feet wide, an impossible situation given the available land and the location of the roads. *See id.* The Court in *Lowe* was not called upon to decide whether

---

4. Similarly, in each of the Utah cases on which the Smays rely in support of their argument that monument calls control, there is a conflict between an actual call to a monument and an inconsistent metes and bounds description or distance reference. *See Mahas v. Rindlisbacher,* 808 P.2d 1025, 1026 (Utah 1990) (concerning a dispute over a boundary line described as "thence South 27 [degrees] West to Canal; thence Southeasterly along said canal to a point North 15 [degrees]") (alterations in original); *Williams v. Oldroyd,* 581 P.2d 561, 562 (Utah 1978) (noting that "[o]ne of the metes and bounds calls is in conflict with a call to a monument; viz., Highway 50 and 6"); *Gillmor v. Cummings,* 904 P.2d 703, 705 (Utah Ct.App. 1995) (concerning a property description that included a reference to "a point 3 rods Easterly from the center line of said road and at right angles thereto; thence along the Easterly side of said road and 3 rods Easterly from the center line thereof and at right angles thereto"), *cert. denied,* 913 P.2d 749 (Utah 1996).

a monument, i.e., a road, as shown on the map prevailed over the conflicting distance calculations. Rather, the Court in *Lowe* was asked to review the trial court's decision on how to apportion the property when the two distance calculations were incompatible. *See id.* at 488. *Lowe* simply does not shed light on the issue before us.[5]

¶ 15 In the case before us, the legal description of the land does not include the creek as a point on—or course along—the boundary, nor does it clearly designate and accurately describe the creek's location. Rather, the creek is roughly drawn on the Margarethe subdivision plat map, and its depiction is not inherently more reliable than the metes and bounds description. Here, there is no presumption that the boundaries should be formed primarily by reference to the creek's location because the creek is not actually called to in the subdivision plat, the plat map is devoid of any angles or measurements connecting the creek to the boundaries of the land, and the only indication that a creek even exists in the area is the freehand drawing of it on the plat map. Moreover, the key metes and bounds description mirrors a previous deed and corresponds perfectly with the boundaries of the neighboring subdivision.

## CONCLUSION

¶ 16 The creek is not mentioned as a point on, or course along, the subdivision boundary. It is only sketched onto the subdivision plat map. Given the low-key nature of the creek's depiction, it is reasonable to assume that the original subdivision developer intended for the metes and bounds description to form the boundaries of the disputed land, unvaried by their position relative to the unmentioned creek. We agree with the trial court that the metes and bounds description controls because the creek, even if regarded

as a natural monument, was not called to in any of the pertinent legal descriptions.

¶ 17 Affirmed.

¶ 18 WE CONCUR: JAMES Z. DAVIS and NORMAN H. JACKSON, Judges.

---

5. The Smays also argue that *Coop v. George A. Lowe Co.*, 71 Utah 145, 263 P. 485 (1927), holds that if a metes and bounds description recites an incorrect distance to a public corner, the metes and bounds description will be presumed to be in error. However, this argument also fails for the same reason stated above, i.e., the issue in *Lowe* was not whether a distance calculation prevails over a tie to a public corner, but rather how to apportion property when two distance calculations are incompatible. *See* 263 P. at 488.