(599 P.2d 314)

No. 50,282

BARBARA J. MUNKRES, *Appellee,* v. CLEVELAND CHATMON and LILY CHATMON, *Appellants.*

Opinion filed August 31, 1979.

*Cleveland Chatmon, pro se.*

*Barbara J. Munkres, pro se.*

Before SPENCER, P.J., SWINEHART and MEYER, JJ.

SWINEHART, J.: This appeal arises out of an action by Barbara J. Munkres, plaintiff-appellee, to terminate an option contract to purchase real estate with Cleveland and Lily Chatmon, defendants-appellants. In their answer, the Chatmons counterclaimed under the provisions of K.S.A. 60-1004, the occupying claimants' act, for improvements made on the real property in question.

On November 21, 1974, the Chatmons entered into an option agreement to purchase property with the plaintiff. The agreement provided that defendants would make monthly payments of $100 on or before the 5th of each month on the principal balance of $6,900 plus interest at the rate of 8% and taxes as they accrued for as long as they wished to keep the agreement in effect. The property was located at 2958 Hutchings, in Kansas City, where defendants had been living since May of 1974.

In July of 1977, plaintiff filed a petition in the district court of Wyandotte County alleging that as of July 9, 1977, the defendants were $300 in arrears, and as of that date the amount due to purchase the premises was $5,615. The plaintiff sought a decree

cancelling the option agreement and directing the defendants to surrender possession of the property. The defendants denied any breach of the agreement and counterclaimed for reimbursement of $4,600 under the occupying claimants' act, K.S.A. 60-1004, for improvements made while they were in possession of the property. The defendants also demanded a jury trial for their counterclaim, as permitted under K.S.A. 60-1004(*b*). Defendants continued occupying the property through the time of trial without making any of the monthly payments.

Before proceeding to trial on April 12, 1978, the trial court ruled that K.S.A. 60-1004 was inapplicable to the proceedings, and denied the defendants' request for a jury trial.

At the trial Mrs. Munkres testified that at the time the suit was brought the defendants were three months behind in payments. She recorded the monthly payments on the back of the contract which plainly showed that the defendants were at least two or three months late with payments on several occasions. As each payment was received, the percentages constituting principal and interest were recorded. At the end of the year the taxes on the property for that year were added onto the amount due. The sum of $5,426.74, plus 1977 taxes of $169.66, were due at the time suit was filed.

Under the agreement the defendants were to maintain insurance on the property in the amount of $8,000. After their insurance policy was cancelled, the plaintiff assumed this responsibility for the residence, but not for any personal property of the defendants. Mrs. Munkres did not charge the defendants for these insurance premiums, although she was permitted to do so under the agreement. She and her mother-in-law both testified that it was difficult to secure the payments from the defendants, and that welfare had to pay the amounts due on several occasions.

The Chatmons could not recall ever being in arrears for the monthly payments for more than one or two months, although the payment record on the contract contradicts their testimony. They also claimed they made the following improvements to the property: plumbing work, *e.g.*, fixing the kitchen sink, installing a new wash basin in the bath, fixing leaking showers, for approximately $2,500; basement repairs, including fixing a wall and pouring a concrete floor, in the approximate amount of $2,000; installing wall-to-wall carpeting and a burglar alarm system for $600 to

$700. No corroborative evidence of the improvements was produced.

After hearing all the evidence, the trial court found: (1) K.S.A. 60-1004 was not applicable to the proceedings. (2) Under the contract the plaintiff was not required to furnish insurance on the personal contents of the property. However, the defendants were required to maintain insurance on the real estate for $8,000 and if they failed to do so, plaintiff could obtain the insurance and charge the premium to the defendants. (3) On at least three separate occasions, defendants were three months behind in their monthly payments. The court relied solely upon the terms of the contract to conclude that the plaintiff had the right to cancel the contract due to the defendants' breach. The court gave the defendants ninety days to redeem the property by tendering $5,596.40 plus the interest due under the agreement. If the Chatmons failed to so redeem, they were dispossessed of the property.

On April 21, 1978, defendants filed a motion for a new trial which was denied after a hearing on June 16, 1978. A notice of appeal from the order denying a new trial was filed on June 22, 1978. On June 28, 1978, a judgment form setting forth the decision on the April 12, 1978, trial was filed. A notice of appeal from the June 28, 1978, judgment form was filed on July 10, 1978.

The parties appeared on this appeal *pro se,* and each prepared his individual brief, which were not in compliance with the Supreme Court rules.

The sole question raised on this appeal is the applicability of K.S.A. 60-1004 to these facts. If it does apply, then the court erred in denying the defendants a jury trial on this issue.

The record reflects that this case was set for trial, and before presentation of any evidence, the trial court ruled that K.S.A. 60-1004 was not applicable because the defendants were not, in fact, occupying claimants. Therefore, they could not assert their claim for repairs or improvements made to the property in the action filed by the plaintiff to cancel the contract to purchase real estate. As a result, the court denied defendants' request for a jury trial. In a trial to the court, the defendants did present testimony relating to the improvements and repairs they made to the property during their occupancy from 1974 to the date of trial. However, they did not produce supporting documentary or other

corroborating testimony, although some affidavits in support of such repairs and improvements were offered with their motion for new trial.

Without question, if the defendants had been permitted to proceed under K.S.A. 60-1004, they would have been entitled to a jury.

"**60-1004. Occupying claimants.** (a) *Right to reimbursement.* Where any person while peacefully occupying realty under color of title in good faith, including mineral leases, has in good faith made improvements thereon or paid obligations in connection therewith, such person shall not be dispossessed by a party, establishing a superior right, claim or title until he or she is fully compensated therefor.

"(b) *Procedure.* If in any action the judge concludes that the occupying claimant should be dispossessed, the judge shall before entering final judgment determine the compensation due the occupying claimant under the provisions of section [a] of this article or if requested by either party he or she shall submit the question to a jury for determination."

The pivotal question for our determination is whether the defendants' possession or use of the real property under the option contract amounted to "peacefully occupying realty under color of title." The trial court found the defendants lacked "color of title."

Color of title is defined in *Fear v. Barwise,* 93 Kan. 131, 136, 143 Pac. 505 (1914), as follows: "Color of title has reference to something which has the appearance or gives the semblance of title but is not such in fact. It has been termed 'apparent right.' " Citing *Newlin v. Rogers,* 6 Kan. App. 910, 51 Pac. 315 (1897). See also 5 Thompson on Real Property § 2650 (1940). A writing which professes to pass title on its face but which does not do so either due to lack of title in the person making it or from some type of defective conveyance may constitute "color of title." 41 Am. Jur. 2d, Improvements § 13, p. 489. An occupying claimant who must hold land under color of title to be compensated for any improvements made on the property cannot establish the requisite color of title by merely having an expectation of acquiring title. 41 Am. Jur. 2d, Improvements § 12, p. 487.

The provisions of K.S.A. 60-1004 have application in cases where there is a dispute as to the title to the real property in question. As can be noted from the above cited cases, each of the parties to the litigation alleged they held fee simple title derived from a deed or other written document purporting to pass full title.

Under the facts of this case, the defendants Chatmon are not in fact alleging that they have fee simple title to this property or that plaintiff does not have a right to possession by reason of the defendants' default under the option contract. Their contention is that by reason of their peaceful occupancy of the realty in good faith under the option contract, they are entitled to recover monies expended in good faith for improvements made before they are dispossessed by Mrs. Munkres.

In view of the above principles, it appears that the defendants did not establish that they held the property situated at 2958 Hutchings under color of title. The option agreement under which they were to pay $100 per month to keep the option open clearly distinguishes between keeping the option open and purchasing the property. The contract states, in pertinent parts:

"Said first party further agrees that if said second party shall exercise the option hereby granted and purchase said real property at any time while this option shall be kept in force by said second party making the payments herein provided for, to give second party credit on the purchase price for all payments which he shall have made under and by virtue of this agreement for said option and to keep it in force, less the amounts deducted as interest from each of the aforesaid payments as hereinafter provided.

". . . In the event second party shall fail to make any of the payments herein provided to be made for the payment of taxes, special assessments, tax bills or insurance, the right of second party to occupy said premises shall cease forthwith, and first party shall have the right to re-possess said premises. In the event second party shall occupy said premises under this agreement, without making the payments herein provided to be made for taxes, special assessments, tax bills and insurance, first party shall have the right to recover from second party the amount thereof during such occupancy, with interest at ten per cent per annum thereon, or add the amount thereof and said interest to the purchase price hereinbefore specified. It is understood that the first party will pay all taxes, special assessments and tax bills upon said real estate for the years prior to 1974, and that the second party shall provide, as hereinbefore set forth, for the payment of subsequent taxes, tax bills and special assessments thereon, in the event he is in possession of said real estate.

"It is further agreed by second party that as a further consideration and compensation for the right to occupy said premises free of rent, there shall be deducted by first party from each of the aforesaid payments made by second party for purpose of extending the option herein granted, an amount equal to the interest at the rate of 8% per cent per annum for the number of days between said payments as provided herein, on a sum equal to the difference between the price for which said second party is given the option to purchase said real property by the terms of this agreement and the amount which they have paid the first party for said option and the net amount paid to keep the same in force after said

deductions as for interest, but in the event of said second party failing to keep said buildings insured or failing to pay said special assessments and tax bills, taxes and amounts as for interest as aforesaid, then in that event the right to occupy said real property shall at once cease and determine, and second party agrees to at once surrender and give possession of said real property to the first party, and that said first party may at once take possession thereof without notice or may eject said second party therefrom, either by suit in forcible detainer or otherwise, but it is hereby agreed and understood that no title, interest or estate in said premises is conveyed by this agreement to second party, but only the right to purchase said real property if he so chooses, in accordance with the terms of the option hereby given, and to occupy said premises as provided herein, and only as provided herein; and it is further agreed and understood that second party is not hereby obligated to purchase said real property or to pay any sum by this contract, except if he occupies said premises in person or by tenant, to pay the insurance, taxes, special assessments, tax bills and interest as provided herein.

. . . .

"It is further agreed between the parties hereto that the failure of the first party to insist upon the forfeiture of this agreement or to take possession of said premises immediately upon the failure of the second party to keep said option in force as provided herein, or that the acceptance of payments for the purpose of keeping said option in force after he is entitled to said forfeiture and to take possession of said property, shall not be considered a waiver of said forfeiture or right to take possession, except as to the specific payment accepted, and said first party may at any time during the continuance of any default in any payment for the purpose of keeping said option in force insist upon and enforce the forfeiture and right to take possession provided for herein."

Nowhere does the agreement purport to pass title to the defendants, absent their decision to exercise the option. The record is void of any attempt on the part of the defendants to do so.

We find the defendants have failed to establish they possessed the property under "color of title" in order to bring themselves within the scope of K.S.A. 60-1004 to obtain reimbursement for any improvements which they may have made.

Judgment of the trial court is affirmed.