NOT DESIGNATED FOR PUBLICATION

No. 121,270

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WILLIAM RINEY, et al.,
*Appellees*,

v.

ANDREW E. MCGUIRE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed September 11, 2020. Affirmed.

*Andrew McGuire*, appellant pro se.

*Deron A. Anliker* and *Alexander J. Aggen*, of Duggan Shadwick Doerr & Kurlbaum LLC, of Overland Park, for appellees.

Before ATCHESON, P.J., BRUNS and POWELL, JJ.

POWELL, J.:  This case involves a property dispute between William Riney and Mary Jane Riney (the Rineys) and Andrew McGuire. After renting a house to McGuire for several years, the Rineys sued McGuire to retake possession of the house and recover unpaid rent. McGuire asserted several counterclaims, including one seeking reimbursement for improvements he claimed he made to the house. The district court granted summary judgment for the Rineys on their possession claim and on all McGuire's counterclaims other than his reimbursement claim. After a bench trial on the remaining issues, the district court awarded the Rineys $11,000 in damages for unpaid rent and

1

found McGuire had not proven his reimbursement claim. On appeal, McGuire contends the district court improperly granted summary judgment for the Rineys, denied him a right to a jury trial, prevented him from presenting evidence on his reimbursement counterclaim, and wrongly excluded two appraisal documents. After a careful review of the record, we are unpersuaded by McGuire's arguments and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*The agreement*

The Rineys own a house on West 80th Street in Overland Park, Kansas, and had lived in the home since the 1990s. But after Mary Jane had a stroke in 2014, they had to move because the house had no wheelchair access. When they put the house up for sale, McGuire contacted them about buying it.

The Rineys agreed to lease the house to McGuire, giving him the option to buy it later. According to the Rineys, they had an oral agreement; McGuire did present them with a typed document purporting to reflect the agreement, but they never signed it. McGuire, on the other hand, said the Rineys asked him to prepare and then signed a written contract reflecting the agreement. Nevertheless, the basic terms of the initial agreement between the Rineys and McGuire are undisputed: The Rineys would lease the house to McGuire for $1,000 a month for one year starting September 1, 2015, and during that time McGuire had the option to buy the house for $185,000 if he could get financing.

McGuire said he applied for a loan, though he could not produce an application at trial. The one-year deadline passed, and McGuire had not exercised his purchase option. But the Rineys continued to rent the house to McGuire for $1,000 a month because

2

McGuire said he was short on a down payment for a loan. Around this time, McGuire showed William a letter from McGuire's bank stating he would need to put $30,000 down for a loan; he told William he did not have that much. At trial, McGuire claimed no bank would give him a loan because the Rineys were behind on property taxes.

*The rent issues and the mechanic's liens*

McGuire timely paid $1,000 for the first month's rent but paid only $500 the next month. After that, McGuire paid almost no rent for two years: $424 in early September 2017 and three $200 payments sometime before then. In total, McGuire only paid $2,524 in rent from September 2015 to September 2017. He paid no rent after that.

On July 31, 2017, the Rineys delivered written notice to McGuire that they were ending the lease and he had until August 31 to vacate the house. Rather than leave, McGuire instead filed a $68,097.68 mechanic's lien against the Rineys for work he claimed to have done on the house. The lien and an invoice attached to it described the work as "furnace/AC unit, mold ex[tr]action, paint, electrical, lumber, drywall, plumbing, etc. junk removal." Both documents included a total price for all work performed but no individual amounts for specific items. The invoice was from an entity called WCP, which McGuire said was his company. McGuire filed another mechanic's lien two weeks later for the same work and total amount.

Right after McGuire filed his first lien, the Rineys filed a Chapter 61 case in the district court for eviction, unpaid rent, and slander of title. At a hearing in January 2018, a magistrate judge dismissed the complaint for lack of jurisdiction. The judge found the Rineys had not sent McGuire a reservation-of-rights letter stating a partial payment he made in September 2017 did not continue their agreement and McGuire claimed an equitable interest in the property. The September payment was the $424 payment

3

mentioned earlier; McGuire had deposited it in the Rineys' bank account, and they did not realize that fact until a few months later.

In mid-September, shortly after the Rineys filed their lawsuit, McGuire sought bankruptcy protection in federal court. His bankruptcy filing triggered an automatic stay of all collection efforts undertaken by creditors, including the Rineys. See 11 U.S.C. § 362(a) (2016). But the bankruptcy court a few months later granted the Rineys' request for relief from the automatic stay—that is, they received permission to pursue their claims against McGuire in state court for possession of the property and unpaid rent.

Although the Rineys were now free to pursue their claims against McGuire, the bankruptcy court also discharged any rent McGuire owed before filing for bankruptcy. However, the Rineys could still seek any postbankruptcy rent owed—McGuire remained in the home and had not paid any rent after his bankruptcy filing.

*The lawsuit*

The Rineys delivered two more written notices to McGuire in February 2018. Both reiterated their view that the July 2017 notice had ended the month-to-month tenancy, the $424 payment from September did not satisfy McGuire's outstanding debt for unpaid rent, McGuire continued to accrue rent debt as a holdover tenant, and asked McGuire to vacate the property.

In March 2018, the Rineys filed suit in the district court. The Rineys sought: (1) possession of the property; (2) a declaration that any encumbrances to their title by McGuire, including any mechanic's liens, were invalid and unenforceable; (3) damages for McGuire's slander of their title; (4) payment of postbankruptcy rent under unjust enrichment and holdover tenant theories; and (5) a setoff against any amounts they may owe McGuire for any unpaid prebankruptcy rent.

4

Appearing pro se as he does on appeal, McGuire answered and demanded a jury trial. He also asserted several counterclaims which included slander, harassment, loss of income, violation of the bankruptcy stay, pain and suffering, attorney fees, and breach of contract and unjust enrichment claims for improvements he made to the house. In their answer to McGuire's counterclaims, the Rineys also requested a jury trial "on all issues so triable under Kansas law." This request was withdrawn five months later.

*The summary judgment motions*

In August 2018, the Rineys first moved for summary judgment on their forcible detainer claim. They argued that under the undisputed facts, they had a right to immediate possession as a matter of law—they owned the house, McGuire had not paid rent, they had delivered written notice ending the month-to-month tenancy, and McGuire still occupied the property. McGuire individually responded to the Rineys' factual statements but provided no citations to exhibits or other evidence supporting his factual allegations. Among other things, he alleged he had an equitable interest in the property arising from improvements he made and that under K.S.A. 60-1004 he had a right to possession until the Rineys reimbursed him for the improvements.

The district court granted the motion after holding a hearing. The undisputed evidence showed the Rineys owned the property and McGuire never received title because he never exercised the purchase option. Moreover, because the Rineys had ended the month-to-month tenancy with written notice, they had a right to retake possession. McGuire was given one month to vacate the property. He timely did so.

A few weeks before trial, the Rineys again sought partial summary judgment, this time on their claim that McGuire's mechanic's liens were invalid and on all of McGuire's counterclaims except for his reimbursement claim. As with the first motion, McGuire responded by denying or disputing most of the Rineys' factual statements without

5

referencing any supporting evidence. Sometimes, however, he referenced some exhibits he attached to his response. The Rineys replied with an affidavit from William. William stated he and Mary Jane never signed a written contract or agreed to pay McGuire for work on the house; besides some mold in the basement, the house was in good condition when McGuire took possession; and the house was in a "dreadful state" after McGuire left.

The district court heard arguments on the second summary judgment motion on the date scheduled for a trial. The district court granted the Rineys summary judgment on their claim that McGuire's mechanic's liens were invalid on the grounds the liens had not been itemized as required by K.S.A. 60-1102(a). The district court also granted summary judgment on all of McGuire's counterclaims included in the Rineys' second motion, finding some of McGuire's claims were not cognizable causes of action and he provided no specific evidence to support his counterclaims. The district court found McGuire had failed to identify any false or defamatory words communicated to a third party; no civil harassment, loss of income, and pain and suffering causes of action existed in Kansas; the Rineys had not violated the bankruptcy stay; and McGuire was not entitled to any attorney fees.

*The trial*

At the beginning of the trial, the Rineys announced they were "voluntarily dismissing . . . without prejudice" their claims for damages resulting from McGuire's slander of their title. The district court received evidence on the remaining claims, first hearing evidence on the Rineys' claims for unpaid rent and then on McGuire's claim for reimbursement for improvements he made to the house.

William testified the parties had agreed to $1,000 a month in rent, but he and Mary Jane had not received any rent from McGuire since he filed for bankruptcy. William did

6

not recall agreeing to reduce rent to about $420 a month or to $200 a week as McGuire suggested but confirmed the only prebankruptcy rent McGuire paid were the amounts listed earlier:  $1,000 the first month, $500 the next month, three $200 payments, and $424 in September 2017.

McGuire admitted he had paid no rent since filing for bankruptcy. But he testified that although he had paid $1,000 for rent the first month, the Rineys had agreed to reduce rent to $200 a week in November 2015. McGuire claimed he had paid over $16,000 in rent before filing for bankruptcy but claimed he lacked proof because the Rineys would not produce their bank records showing the rent deposits he had made. But McGuire acknowledged on cross-examination he never subpoenaed those records.

As to McGuire's reimbursement counterclaim, McGuire testified the Rineys had signed a written contract agreeing to pay for improvements he had made to the property and produced what he claimed was a copy of the contract. McGuire said his work included replacing the air-conditioning unit and other appliances that he said were not working; tearing out cabinets and removing junk; and remodeling the basement, kitchen, and family room. He submitted photos of this work and some receipts totaling about $23,000 for materials. However, the name on the credit card used to pay for these materials and listed on the receipts was James Gregory, a person McGuire said had lent him some money to improve the house. McGuire claimed Gregory was unavailable to testify because he was in Mexico. McGuire admitted he did not finish any of the work he started in the house.

To show his work improved the house's value, McGuire presented two appraisals—one from before his lease started and the other from two years later after he had worked on the house. He had attached these appraisals as exhibits to his response to the Rineys' second summary judgment motion. The district court refused to admit the

7

appraisals as evidence because they contained hearsay statements and rejected McGuire's claim that the business records exception to the hearsay rule applied.

In addition to his own testimony, McGuire called Mary Jane as a witness. Other than some mold in the basement, she said the house was in great shape when she and her husband moved out. She also testified they never brought McGuire a contract to sign.

The district court then asked McGuire if he had any other witnesses to present. McGuire asked to call William to testify again, this time about whether he consented to the renovations that McGuire did. But the district court denied that request, stating William's testimony would be irrelevant because there was a contract. The district court then asked McGuire if he had anything else to present, and McGuire said no.

*The district court's findings*

The Rineys orally moved for judgment as a matter of law on the rest of McGuire's counterclaims. In response, McGuire said that in his view the district court had not yet covered his breach of contract counterclaim.

The district court granted the Rineys' motion on McGuire's counterclaims and then announced its findings on the rent claims. The district court awarded the Rineys $11,000, an amount reflecting $1,000 for each month McGuire remained in possession of the property after filing for bankruptcy. As for prebankruptcy rent, the district court found no support for McGuire's assertion that he paid over $16,000; instead, the evidence showed he only paid around $2,500.

The district court sorted through all the evidence McGuire submitted to show the improvements he made to the house. Although the photos McGuire presented made it clear he performed some work, none of it was completed. And the district court found it

8

"absolutely impossible, to determine what, if anything, was purchased that went into this home." For example, the district court noted the receipts were not legible and some were not itemized. Moreover, the district court found no matter what McGuire may have spent, the receipts came nowhere close to exceeding the amount of prebankruptcy rent he owed. The district court found McGuire had left the house in an unsellable condition, contrary to his claim that his work enhanced the house's value. For these reasons, McGuire had not come close to proving he was entitled to reimbursement for any of the improvements he made to the house.

Finally, the district court discussed the contract claim. Unfortunately, its oral findings on this point are somewhat unclear. The district court started by stating that "breach of contract [was] clear" and appearing to credit the written agreement that McGuire had produced. Then the district court construed the contract as a rental agreement, noting that McGuire failed to secure financing and exercise his purchase option. Although the written contract mentioned improvements, the district court found it "insignificant . . . if they were approved or not" because "at the end of the day, th[e] house was not left in the condition where it could be sold. There was no increased value." It appears from the record the district court found the Rineys had signed a written contract agreeing to pay for improvements but McGuire could not recover because his work did not improve the property.

The district court entered a written journal entry combining its findings on the Rineys' second summary judgment motion, their motion for judgment as a matter of law on McGuire's counterclaims, and the district court's bench trial findings on the Rineys' rent claims. As the district court had stated in its oral findings, the journal entry awarded the Rineys an $11,000 judgment.

McGuire timely appeals.

ANALYSIS

On appeal, McGuire appears pro se—as he did in the district court—and challenges various aspects of the district court's decisions. Unfortunately, his arguments are inartfully worded, and we do our best to give effect to his arguments' content and substance rather than the labels he attaches to them. See *Nguyen v. State*, 309 Kan. 96, 105, 431 P.3d 862 (2018) (pro se pleadings to be liberally construed).

I. *Did the district court properly grant summary judgment on the Rineys' possession claim and on McGuire's counterclaims?*

McGuire appeals the district court's two summary judgment decisions. For both decisions, he claims summary judgment was improper because material facts were in dispute.

The legal rules applicable to summary judgment are well known. Summary judgment is appropriate if all the case materials—the pleadings, depositions, interrogatory answers, admissions, and affidavits—show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In reviewing the evidence, the district court must resolve all facts and reasonable inferences from them in favor of the nonmoving party. On appeal, we apply the same rules, and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Thoroughbred Assocs., L.L.C. v. Kansas City Royalty Co.*, 297 Kan. 1193, Syl. ¶ 2, 308 P.3d 1238 (2013).

A. *Forcible detainer*

McGuire first disputes the district court's decision to grant summary judgment on the Rineys' claim for possession of the property. Forcible detainer is a statutory claim

10

involving the single question of who has a right to immediate possession of the property. *McCracken v. Wright*, 159 Kan. 615, 618-19, 157 P.2d 814 (1945). We see nothing in the record that counters the Rineys' right to possession of the property.

It is important to note that before the district court, McGuire never raised a genuine dispute about the material facts needed to grant the Rineys immediate possession of the property. In an affidavit, William said he and his wife owned the property and had agreed to rent it to McGuire for $1,000 a month. A separate affidavit from their attorney stated the Rineys had delivered three notices—one in July 2017 and two in February 2018—ending the month-to-month tenancy. Those notices were properly attached as exhibits to their first summary judgment motion. The motion also cited factual assertions in both the complaint and the answer that McGuire had not vacated the property despite receiving the notices. If undisputed, according to this evidence the Rineys had a right to immediate possession of the property and McGuire did not as a matter of law. See K.S.A. 58-2570(c) ("If the tenant remains in possession without the landlord's consent after . . . [the rental agreement's] termination, the landlord may bring an action for possession.").

To preclude summary judgment, McGuire then had to "come forward with evidence to establish a dispute as to a material fact." See *Thoroughbred*, 297 Kan. 1193, Syl. ¶ 2. He failed to do so because his factual responses failed to "set out specific facts showing a genuine issue for trial"; instead, he relied on mere "allegations or denials in [his] own pleadings." See K.S.A. 2019 Supp. 60-256(e)(2).

For example, McGuire asserts the Rineys did not own the house. To prove ownership, the Rineys submitted William's affidavit. McGuire, in contrast, merely denied ownership without filing his own affidavit or providing other evidentiary support. Conclusory allegations of that kind do not create a genuine factual dispute on an issue that has been supported by an uncontradicted affidavit. See *Ebert v. Mussett*, 214 Kan. 62, Syl. ¶ 3, 519 P.2d 687 (1974). McGuire's responses to the other material facts were

much the same. Thus, McGuire failed to controvert any material fact that entitled the Rineys to summary judgment.

Unable to show the material facts regarding the Rineys' right to immediate possession were in dispute, McGuire pivots to legal ground. He claims he acquired an equitable interest in the property due to the improvements he made, meaning he had a legal right to stay on the property until the Rineys paid him for those improvements.

McGuire cites three statutes that purportedly support this proposition. But two of the statutes he cites plainly do not apply to detainer claims like this one—K.S.A. 60-1002, which applies to quiet title claims, and K.S.A. 2019 Supp. 60-1005, which applies to replevin claims to recover personal property. The third statute he cites, K.S.A. 60-1004, arguably is the only one potentially applicable here. It does require reimbursement for improvements before a court grants possession to a party with superior title, but only if the party occupying the property is doing so peacefully "under color of title in good faith." K.S.A. 60-1004(a).

To meet that standard, McGuire would need to claim an interest in the property "based upon a writing which purports to convey title on its face but which does not do so." *Munkres v. Chatmon*, 3 Kan. App. 2d 601, Syl. ¶ 1, 599 P.2d 314 (1979). Put differently, he would have to allege he received "title which gives the appearance or semblance of title but in fact does not." 3 Kan. App. 2d 601, Syl. ¶ 2. For example, a buyer at a judicial sale that is later set aside because the owner had no notice of the sale would qualify as a person occupying under color of title and could remain in possession until receiving payment for improvements. See *Board of Wyandotte County Comm'rs v. Adkins*, 12 Kan. App. 2d 522, 522, 749 P.2d 1056 (1988). But here, as the district court found, McGuire had no claim to title because he never exercised the purchase option. He never alleged any facts that would qualify him as a person occupying under color of title, so he had no possession rights under K.S.A. 60-1004.

McGuire offers two other arguments for why the district court erred in granting summary judgment for the Rineys on their possession claim. First, he objects to the timing of the motion. He claims the district court could not grant summary judgment until it had ruled on a bifurcation motion, held a pretrial conference, and allowed discovery to occur. But K.S.A. 2019 Supp. 60-256 does not impose any such requirements; nothing in the statute prevents a party from requesting (or a court from granting) summary judgment before the events that McGuire cites occur. In fact, the opposite is true: "A party may move for summary judgment at any time until 30 days after the close of all discovery." K.S.A. 2019 Supp. 60-256(c)(1)(A). While it is usually preferable not to grant summary judgment until after discovery is complete, it "may be appropriate even when discovery is unfinished" if, as was the case here, the material facts are undisputed. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, Syl. ¶ 14, 296 P.3d 1106, *cert. denied* 571 U.S. 826 (2013). The district court did not err in granting summary judgment on the possession claim when it did.

Second, McGuire makes a fleeting argument about the Rineys not serving him with something called a "Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion." This is a document that a represented party appearing in the United States District Court for the District of Kansas must serve on a pro se party when filing for summary judgment pursuant to D. Kan. Rule 56.1(f). But that rule applies to federal court, not a state court. D. Kan. Rule 1.1(a). McGuire cites to us no analogous Kansas statute or court rule that would have applied in the district court.

In short, McGuire has failed to establish any genuine issue of material fact on the Rineys' possession claim, and those facts entitled the Rineys to possession as a matter of law. The district court properly granted the Rineys' first summary judgment motion.

B.     *Counterclaims*

McGuire only briefly disputes the district court's decision to grant summary judgment on all his counterclaims other than his reimbursement claim. Again, his briefing is inartful as it devotes only one line in his opening brief and reply brief each to the Rineys' claim that his mechanic's liens were invalid. According to our Supreme Court, he has waived any objection to the district court's decision on this issue by not supporting his argument with any legal authority. See *In re T.S.*, 308 Kan. 306, 312-13, 419 P.3d 1159 (2018). Even if he had, it would make no difference as the district court found that the liens were not itemized as required by K.S.A. 60-1102(a)(4) and were thus unenforceable as a matter of law.

McGuire also contends he could have supported his counterclaims with affidavits but never did so because they are unethical documents used by lawyers to deceive courts. McGuire is entitled to his opinion about affidavits, but a statute permits their use in summary judgment proceedings. See K.S.A. 2019 Supp. 60-256(a), (b), (e). And if he believed the Rineys submitted an affidavit in bad faith, that same statute allowed him to challenge it as such. See K.S.A. 2019 Supp. 60-256(e)(2). Instead, he relied on mere "allegations or denials," which cannot preclude summary judgment. See K.S.A. 2019 Supp. 60-256(e)(2).

1.     *Slander*

McGuire's first counterclaim sought damages from the Rineys for slander. He alleged they made false and defamatory statements to third parties, including government agencies. Slander requires "false and defamatory words communicated to a third person which result in harm to the reputation of the person defamed." *Dominguez v. Davidson*, 266 Kan. 926, Syl. ¶ 3, 974 P.2d 112 (1999). The district court granted summary

judgment to the Rineys on McGuire's slander counterclaim because he identified no defamatory words communicated to a third party.

On this particular point the record does not support the district court's findings. McGuire alleged in his response to the Rineys' summary judgment motion that they made false reports about him to the Overland Park Police Department and the Kansas Department for Children and Families (DCF). For support, he attached a letter from DCF, stating that someone had reported him for abusing Mary Jane, and a police incident report. He claimed these documents showed the Rineys had falsely reported him to DCF for abuse and to the police for theft and unpaid rent. If William or Mary Jane made these reports, the third-party communication element of slander would be satisfied.

But McGuire's slander claim still fails as a matter of law because he provided no evidence those communications harmed his reputation. Reputational injury is the essence of a defamation claim; no slander claim can succeed without it. *Gobin v. Globe Pub. Co.*, 232 Kan. 1, Syl. ¶ 2, 649 P.2d 1239 (1982). Even if we assume the Rineys made false and defamatory reports to the police and DCF, McGuire never provided evidence to show these statements harmed his reputation.

Instead, McGuire once again made only conclusory allegations of reputational harm unsupported by evidence. His answer claimed the Rineys' statements had "altered [his] reputations and . . . repairs will take time." The only other place he mentioned reputational harm was in one paragraph of the argument section of his summary judgment brief. There, he asserted the false reports would prevent him from getting hired as a public school teacher. But McGuire provided no affidavit or other specific facts to support that assertion. Again, he cannot create a genuine issue of material fact without evidence. See K.S.A. 2019 Supp. 60-256(e)(2); *Thoroughbred*, 297 Kan. 1193, Syl. ¶ 2. Even if the district court erred in dismissing the slander counterclaim on third-party grounds, its decision can still be affirmed as right for the wrong reason because McGuire

15

alleged no reputational harm. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 341, 277 P.3d 1062 (2012).

### 2.    *Harassment*

McGuire's harassment counterclaim requested damages for the Rineys excessively calling him and visiting the property. The district court granted summary judgment because there is no cause of action for civil harassment in Kansas and because McGuire's claim would fail even if the district court had construed it as an infliction of emotional distress claim. Rather than confront these arguments, McGuire cites his trial court brief, claiming it included relevant legal authority and facts to support a harassment claim.

None of the authorities McGuire points us to establish that Kansas recognizes a civil claim for harassment. Consider his citation to the definition of harassment in K.S.A. 2019 Supp. 60-31a02(d)(1). That statute authorizes protection orders from stalking, not civil liability and money damages. See K.S.A. 2019 Supp. 60-31a04. The same is true for his passing reference to K.S.A. 58-2557(c), which says a landlord should not use its right to access the property "to harass the tenant." That provision is 16 words long; none of them create a cause of action for civil harassment. Nor does K.S.A. 2019 Supp. 21-6206, which criminalizes certain harassing statements made with a telecommunications device. McGuire cited no legal authority that Kansas recognizes a civil harassment claim, so the district court properly granted summary judgment for the Rineys.

### 3.    *Loss of income, pain and suffering, attorney fees, and violation of the bankruptcy stay*

As to his other counterclaims, McGuire says little. He never mentions the district court's decision on what he called a violation of bankruptcy stay claim. He devotes only a few sentences to his claims for loss of income and attorney fees, and he does not mention

16

his pain and suffering claim. He has waived those issues by inadequately briefing them. See *In re T.S.*, 308 Kan. at 312-13. But again, even if he had, it would make no difference because the district court was right to grant summary judgment on them.

Loss of income and pain and suffering are not stand-alone causes of action. They are types of damages recoverable in a personal injury action. See *Kuhl v. Atchison, Topeka & Santa Fe Ry. Co.*, 250 Kan. 332, Syl. ¶ 3, 827 P.2d 1 (1992). However, McGuire never alleged that type of claim. The district court did not err in dismissing the loss of income and pain and suffering claims.

As for his claim for attorney fees, McGuire simply rehashes the arguments he made in the district court. He maintains the Rineys lied to him throughout the lawsuit and intentionally prolonged the case to increase his legal fees. Even if that were true, he could not recover fees as a matter of law because in Kansas attorney fees are recoverable only if a statute or an agreement between the parties allows them. See *Thoroughbred*, 297 Kan. at 1215. McGuire does not point us to any such statute or agreement here, so he could not recover fees even if his unsupported allegations about the Rineys' litigation tactics were true.

II.     *Did McGuire have a right to a jury trial under § 5 of the Kansas Constitution Bill of Rights?*

Next, McGuire contends he had a constitutional and statutory right to a jury trial. The Rineys respond that McGuire had no jury trial right here because the sole claim on which he might recover—unjust enrichment—was equitable.

Any jury trial right that McGuire might have must come from the Kansas Constitution or a Kansas statute, not the United States Constitution. The Seventh Amendment to the United States Constitution provides a right to a jury trial in federal

17

court; it does not apply in state court cases. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 432, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996); *Vanier v. Ponsoldt*, 251 Kan. 88, Syl. ¶ 3, 833 P.2d 949 (1992). So if McGuire had a jury trial right, it must arise under the analogous provision in the state constitution, § 5 of the Kansas Constitution Bill of Rights.

Under § 5 of the Kansas Constitution Bill of Rights, "[t]he right of trial by jury shall be inviolate." Section 5 preserves the jury trial right as it existed at common law in 1859 when the Kansas Constitution was ratified. *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1133-34, 442 P.3d 509 (2019) (plurality opinion); 309 Kan at 1151 (Stegall, J., concurring). Legal claims are triable to juries as a matter of right; equitable claims are not. See *Karnes Enterprises, Inc. v. Quan*, 221 Kan. 596, Syl. ¶¶ 2-3, 561 P.2d 825 (1977).

Admittedly, applying the law-equity distinction can prove tricky in a case like this with multiple claims, some legal and others equitable. "In determining whether an action is one in equity the test is whether the essential nature of the action is grounded on equitable rights and is one in which equitable relief is sought." 221 Kan. at 600. But "[t]he existence of legal [counterclaims] does not alter the essential nature of the action." *First National Bank of Olathe v. Clark*, 226 Kan. 619, 623, 602 P.2d 1299 (1979). Moreover, "[w]here a court of equity obtains jurisdiction of an action for the purpose of granting some distinctively equitable relief, the court will take jurisdiction for all purposes and determine all issues in the case." *Quan*, 221 Kan. at 601. To determine on which side of the legal-equitable line a case falls, we consider the substance of the parties' claims from the pleadings. 221 Kan. at 601.

The district court clearly had jurisdiction to consider the parties' equitable claims. As to the Rineys' claims, they voluntarily dismissed their claim for damages arising out of McGuire's alleged slander of their title to the property and had subsequently waived

18

any request for a jury trial. After the district court granted the Rineys partial summary judgment, what remained of their claims to be tried were essentially equitable in character. See *In re Peterson*, 253 U.S. 300, 310, 40 S. Ct. 543, 64 L. Ed. 919 (1920) ("No one is entitled in a civil case to trial by jury, unless and except so far as there are issues of fact to be determined."); 9 Wright & Miller, Federal Practice & Procedure: Civil § 2302.4 (3d ed. 2008) ("It is now well established that the right to a jury trial exists only when there is some genuine issue of material fact to be determined."). The Rineys' claim for postbankruptcy rent was pled as an unjust enrichment claim for specific performance, an equitable claim. See *Quan*, 221 Kan. at 601 (actions for specific performance equitable in nature). Their claim for prebankruptcy rent was also an unjust enrichment claim seeking a setoff as they would only be entitled to relief if McGuire were successful on his remaining counterclaim seeking reimbursement for improvements he made to the home. Setoff is an equitable remedy to which no jury trial right attaches. See *In re Estate of Heiman*, 44 Kan. App. 2d 764, 771-72, 241 P.3d 161 (2010).

McGuire's counterclaim for reimbursement was based on both legal and equitable theories. His legal basis for relief was under contract. He claimed the Rineys had breached their agreement that he would be reimbursed for improvements to the home. Alternatively, he asserted this same claim as one based on unjust enrichment—an equitable claim—on the theory the Rineys would be unjustly enriched by not paying him for the improvements he made to the house. While it is true that one theory of relief sought by McGuire was legal in nature, the essential nature of the action before the district court was equitable in character because all other claims to be tried were in equity. Once the district court had jurisdiction to decide the equitable claims, it then had the authority to decide the remaining legal claim as well, and McGuire no longer had any right to a jury trial on that one claim. See *Quan*, 221 Kan. at 601. The district court did not deny McGuire's right to a jury trial by trying the case.

III.    *Was McGuire fully heard on his reimbursement counterclaim?*

McGuire next argues he was not given the opportunity to fully try his counterclaim seeking reimbursement for improvements he made to the home. McGuire never really ties this argument to a legal theory on which we could grant him relief. The Rineys construe his claim as one grounded in procedural due process. McGuire essentially argues he had more evidence to present but could not do so because the district court would not allow him to. He asks us for a remand so he may fully present his counterclaim to the district court.

McGuire's argument falls short. First, the only specific evidence he references is William's testimony. In particular, he claims the district court would not let him call William back as a witness to elicit testimony on his contract claim. That statement is true, but the district court did so because the only issue McGuire said he wanted to ask William about was "[t]he consent to do renovations to the property and the acceptance of those renovations." William had submitted an affidavit answering that question and McGuire had presented a written contract on the point, so William's testimony would have been cumulative. The district court has inherent powers to exclude such evidence, *State v. Reed*, 282 Kan. 272, Syl. ¶ 4, 144 P.3d 677 (2006), and it did not abuse its discretion in exercising them here.

Second, McGuire mentions no evidence he could present if given another chance that would overcome the reason his reimbursement counterclaim failed:  He could not show that the value of his work exceeded the rent he owed. Even if McGuire could pile on evidence that the Rineys agreed to reimburse him for improvements, he could not show damages. McGuire admitted that all the work he did was unfinished, and he never disputed the Rineys' affidavits and testimony stating they could not sell the house in the condition he left it. And as the district court found, it was impossible to tell from the receipts and photos he submitted how much he spent on materials or even if they went

20

into the house. McGuire came nowhere close to showing that the work he did outweighed unpaid rent.

IV.    *Did the district court abuse its discretion in excluding two appraisal documents?*

Finally, McGuire argues the district court erred in excluding two appraisal documents under the rule against hearsay. Hearsay statements—out-of-court statements offered for their truth—are inadmissible unless a statutory exception applies. K.S.A. 2019 Supp. 60-460. The appraisal documents here contained hearsay statements. They were completed by third parties (the appraisers) who did not testify at trial, and McGuire was offering them for their truth (to show the house's value). Thus, the documents were admissible only if an exception applied.

McGuire claims the district court should have admitted the appraisals under the business records exception in K.S.A. 2019 Supp. 60-460(m). Business records are "[w]ritings offered as memoranda or records of acts, conditions or events to prove the facts stated therein." K.S.A. 2019 Supp. 60-460(m). Statements in those records are admissible "if the judge finds that:  (1) They were made in the regular course of a business at or about the time of the act, condition or event recorded; and (2) the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness." K.S.A. 2019 Supp. 60-460(m).

The district court may admit business records after a preliminary showing from the party offering them of their authenticity and accuracy. We review the district court's decision to admit or not admit hearsay evidence under the business records exception for abuse of discretion. Unless the district court commits legal or factual error, it abuses its discretion only if no reasonable person would agree with its decision. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

Excluding the appraisals was not legal error because neither element of the business records exception was met here. McGuire provided no evidence the appraisals were made in the regular course of the businesses that prepared them and no evidence the documents were prepared at or near the time the appraisals were conducted. Nor did he show the appraisers' collection methods were reliable and trustworthy. Thus, the district court committed no legal error in not applying the business records exception.

Accordingly, we hold the district court did not err in granting the Rineys' motions for summary judgment, rejecting McGuire's demand for a jury trial and admission of the appraiser reports, and granting judgment for the Rineys including their claim for an award for postbankruptcy rent.

Affirmed.